PINNEY, Respondent, vs. PROVIDENCE LOAN & INVESTMENT COMPANY, imp., Appellant.

*March 20 — April 6, 1900.*

*Constitutional law: Corporations: Constructive service of process: "Due process of law."*

1. In order that a statute authorizing constructive service of summons upon a corporation should be valid, the method provided should be reasonably calculated to bring notice home to some of the officers or agents of the corporation, and thus secure an opportunity to be heard and to make a defense.

2. The provision of sec. 1775b, Stats. 1898, that until a domestic private corporation has filed with the register of deeds of the county where

Pinney vs. Providence Loan & Investment Co.

its principal office is located a list of its officers upon whom service of process, etc., may be made, such service may be made by leaving a copy of the process, etc., with the register of deeds, is void, being in violation of sec. 1, art. XIV, Amendm. Const of U. S. (which declares that no state shall deprive any person of life, liberty, or property without due process of law).

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

For the appellant there were briefs by *Catlin, Butler & Lyons,* and oral argument by *Thos. E. Lyons.*

For the respondent there was a brief by *Thorson & De LaMotte,* and oral argument by *J. DeLaMotte.*

CASSODAY, C. J.    The plaintiff, as the grantee in a tax deed issued to her August 16, 1898, by Douglas county, upon the tax sale of 1895 for the taxes of 1894, claims to have commenced this action October 4, 1898, under sec. 1197, Stats. 1898, against the defendant *Providence Loan & Investment Company,* as the former owner of the land described, and one Sarazin, claiming to be a part owner thereof, to bar them and each of them from all right, title, interest, and claim in and to the lands described.    It appears that service of summons was made or claimed to have been made on the defendant Sarazin as a resident of Houghton, Michigan, by publication.    There was no appearance in the action, and judgment on default was entered February 25, 1899, according to the prayer of the plaintiff's complaint.    The only proof of service of the summons or the summons and complaint on the defendant corporation found in the judgment roll, and upon which such judgment was so entered, is an affidavit of one Fred A. Russell, who became the register of deeds in January, 1899, to the effect that October 4, 1898, there was filed in his office as such register the summons and complaint in this action by delivering to and leaving with such register true copies thereof; that at that time the defendant corporation had filed no list containing the names of its president,

vice-president, secretary, treasurer, or managing agent on whom service of process, notice, or orders might have been made, as provided in subd. 10, sec. 2637, Stats. 1898; that such *Providence Loan & Investment Company* was then a private corporation, organized and existing under the laws of the state of Wisconsin; and that its principal offices were in the city of Superior, Douglas county. On September 22, 1899, the defendant corporation appeared in the action by attorneys *specially*, and appealed to this court from the judgment in favor of the plaintiff and against such corporation, barring it from all right, title, and interest in the land described in such complaint and judgment.

On February 14, 1900, the plaintiff obtained an order upon the appellant to show cause why the plaintiff should not be allowed to amend her proof of service by filing with and making a part of the record certain affidavits thereunto attached. Upon the hearing of that motion it appeared from such affidavits that October 4, 1898, the plaintiff's attorney and the then register of deeds, P. A. Sandberg, searched the register's office, and found no list of officers of the defendant corporation; that the plaintiff's attorney then gave the summons and complaint to such register, who handed the same to his deputy, W. H. Smith, who filed the same and made the entry, under date of October 4, 1898: "Numerical Index Book, No. 110,482. Service on Providence Loan & Trust Co., filed." It further appeared upon such motion from an affidavit of Fred A. Russell, explaining his former affidavit, mentioned, to the effect that the only knowledge he had at the time of making that affidavit was such entry in the index book, above quoted; that he never saw the papers until February 21, 1900, and then found them among the files of notices of *lis pendens*. It also appears from the affidavit of one of the attorneys for the defendant corporation, in effect, that the summons and complaint were delivered to one A. C. Titus, October 4, 1898, but that, as A. C. Titus

was not an officer or agent of the defendant corporation, he paid no further attention to such service; that a few days thereafter he inquired of the register of deeds, Sandberg, who, after search in his office, said there were no papers in any such action on file therein; that September 1, 1899, he first learned that such judgment had been entered on default February 25, 1899.

The facts in regard to the summons and complaint having been delivered to and left with the register of deeds by the plaintiff's attorney October 4, 1898, are undisputed, and show a compliance with sec. 1775*b*, Stats. 1898, as it then stood. As indicated, the defendant company was then a private corporation organized and existing under the laws of this state, and had its principal office in the city of Superior. By the statute cited it was required, on or before October 1, 1898, to file in the office of the register of deeds of that county a list of the names of its officers therein mentioned " on whom service of process, notices, or orders " might be made as provided by subd. 10, sec. 2637. The right of the legislature to require such corporation to so file such list is not and cannot be successfully questioned. It has been said upon high authority that: " A state, on creating corporations or other institutions for pecuniary or charitable purposes, may provide a mode in which their conduct may be investigated, their obligations enforced, or their charters revoked, which shall require other than personal service upon their officers or members. Parties becoming members of such corporations or institutions would hold their interest subject to the conditions prescribed by law." *Pennoyer v. Neff*, 95 U. S. 735, 736. Sec. 1775*b* was also made applicable to such corporations formed after October 1, 1898. That section also provided that " in all cases until such list of officers is so filed as aforesaid service of all legal process, notices, orders or other legal proceedings may be lawfully and effectually made upon any such corporation by delivering to and

leaving with the register of deeds where such corporation has its principal office true copies of such legal process, orders, notices or proceedings, in which case service so made shall be valid." The subsequent amendment of that section does not affect the question here presented. Ch. 46, Laws of 1899.

It does not appear that any attempt was made to serve the summons or summons and complaint on any of the officers of the defendant corporation, as required by subd. 10, sec. 2637, Stats. 1898; nor by the publication of the summons, as required by sec. 2639. As indicated, the only service or attempted service of the summons or summons and complaint in this action upon the defendant corporation was "by delivering to and leaving with the register of deeds" true copies of such summons and complaint, as required by the statute quoted. The important question which here confronts us is whether such service was valid and binding upon the defendant corporation; in other words, Was such service sufficient to authorize the judgment forever barring the corporation from any and all right, title, and interest in and to the land described? For the purpose of this appeal it must be assumed that at the time of the alleged service the defendant corporation had the lawful and rightful title and possession to the land. Was it deprived of such right, title, and interest in and to the land by due process of law? In other words, Is the clause of the statute quoted, authorizing such service upon the register of deeds, a valid law?

The constitution of the United States declares that "no state shall . . . deprive any person of life, liberty, or property, without due process of law." Sec. 1, art. XIV, Amendm. Const. of U. S. The words " without due process of law " were borrowed from a very early English statute, as an improved rendition of the words contained in Magna Charta. 1 Coke, Second Inst. 50; *Murray's Lessee v. Hoboken L. & I. Co.* 18 How. 276; *Davidson v. New Orleans,* 96 U. S.

101.　In the first of these cases it was said by Mr. Justice CURTIS, speaking for the court, that: "It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative, as well as on the executive and judicial, powers of the government, and cannot be so construed as to leave Congress free to make any process ' due process of law' by its mere will." P. 276. And again he said in that case: "For, though ' due process of law' *generally* implies and includes *actor, reus, judex,* regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings, . . . yet this is not universally true." 18 How. 280. In the last case above cited Mr. Justice MILLER, speaking for the court, said: "A statute which declares in terms, and without more, that the full and exclusive title of a described piece of land, which is now in A., shall be and is hereby vested in B., would, if effectual, deprive A. of his property without due process of law, within the meaning of the constitutional provision." *Davidson v. New Orleans,* 96 U. S. 102. That court has frequently declared, in effect, that the words "without due process of law" were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice. *Bank of Columbia v. Okely,* 4 Wheat. 244; *In re Kemmler,* 136 U. S. 448; *Leeper v. Texas,* 139 U. S. 462; *Duncan v. Missouri,* 152 U. S. 377; *Marchant v. Pa. R. Co.* 153 U. S. 380. In the language of Mr. Justice FIELD: "It is sufficient to observe here that by ' due process' is meant one which, following the forms of law, is appropriate to the case and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law. It must be adapted to the end to be attained. And, wherever it is necessary for the protection of the parties, *it must give them an opportunity to be heard* respecting the justice of the judgment sought.

The clause in question means, therefore, that there can be no proceeding against life, liberty, or property which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights." *Hagar v. Reclamation Dist.* 111 U. S. 708. So it has been held by that court that, where a state statute authorized a commission to finally and conclusively fix the rates of charges by railway companies for the transportation of property, without an opportunity for judicial inquiry as to the reasonableness of such rates, such companies were deprived of their property without due process of law. *Chicago, M. & St. P. R. Co. v. Minnesota,* 134 U. S. 418. That court has just held that, although personal service on nonresidents, outside of the jurisdiction of the court, may, under proper circumstances, be sufficient to constitute due process of law in a suit for the foreclosure of a lien upon land within the state, yet that only five days' notice in such a case, under the circumstances stated, was "insufficient to constitute reasonable notice or due process of law." *Roller v. Holly,* 176 U. S. 398.

The important thing in all ordinary actions, and especially in a case like this, is that, before a person shall be deprived of his property by legal proceedings, he shall have actual or constructive notice and an opportunity to be heard. It is settled by numerous adjudications of the supreme court of the United States that a corporation is a "person" within the meaning of the constitutional clause in question. *Smyth v. Ames,* 169 U. S. 466, 522, and cases there cited. It follows that the defendant corporation cannot be deprived of its property without due process of law, any more than any citizen of the state. While foreign corporations may be permitted to do business within the state upon certain conditions, or be excluded altogether, and while domestic corporations may be subject to reasonable regulations and control, yet neither can be deprived of its property without

due process of law. Undoubtedly, the legislature may, as it has in certain cases, authorize constructive service of summons to be made upon corporations, as well as individuals, especially where the action concerns property located within the state; but the method adopted should be reasonably calculated to bring notice home to some of the officers or agents of the corporation, and thus secure an opportunity for being heard and making a defense before the determination. Such service was not secured "by delivering to and leaving with the register of deeds . . . true copies" of the summons and complaint, as prescribed by the portion of the statute quoted. On the contrary, such service, if held to be effectual, would be well calculated to conceal from the officers and agents of the corporation the fact that such an action had been commenced. True, the register is a public officer, with duties prescribed by statute; but he is in no sense the agent or representative of "private corporations, incorporated or organized under any law of this state." Such corporations are supposed to be clothed with authority to select and appoint their own officers and agents. We must hold the clause of the statute in question to be unconstitutional and void.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.