SMETAL CORPORATION v. WEST LAKE INVESTMENT CO.,
HULDA ELSASSER, *et vir*.

172 So. 58.
Opinion Filed April 16, 1936.
On Rehearing January 19, 1937.

596

598

*Shutts & Bowen* and *Ch. A. Carroll,* for Appellant;

*C. H. Landefeld, Jr.,* and *W. J. Robinson,* for Appellees.

BROWN, J.—This is an appeal from a final decree of the Circuit Court of Broward County, which dismissed an amended bill, brought within six months after the rendition of a tax lien foreclosure decree, seeking to review and have set aside said foreclosure decree for error apparent on the record, and also to impeach the foreclosure decree for fraud in its procurement.

A bill of review, or a bill strictly in the nature of a bill of review, cannot be filed without first obtaining the permission of the Court. In so far as the bill in this case sought a review of the foreclosure decree for alleged error apparent on the record, the above rule would apply. An original bill to impeach a former decree for extrinsic fraud in its procurement is an independent bill and can be filed without first obtaining the permission of the Court. Gamble v. Gamble Holding Corporation, 162 So. 886. But in this case, the plaintiff below, after first obtaining leave of the Court, filed an amended bill, which permission in effect complied with the rule in so far as it was a bill of review. However, in so far as it was a bill of review, for errors alleged to appear in the record of the proceedings, the sub-

ject matter had already been substantially incorporated in a special appearance and motion to vacate, attacking the jurisdiction of the court over the plaintiff as defendant in the original foreclosure suit, on the ground that plaintiff had not followed the proper procedure for obtaining substituted service, and that service by publication had not been shown to be authorized, nor had due diligence been shown. On this motion the court below had, after hearing and argument, ruled adversely to the then defendant, the plaintiff in the suit now before us, and no appeal was taken from that order, thus rendering the matters raised by the motion *res judicata*. See Allison v. Handy-Andy Community Stores, 106 Fla. 274, 143 So. 263. Such remedy by motion is available in cases of this kind. Sawyer v. Gestason, 96 Fla. 6, 118 So. 57; Gibbs v. Ewing, 94 Fla. 236, 113 So. 747.

In so far as the amended bill may be considered as a bill brought for the purpose of impeaching the foreclosure decree on the ground of fraud in its procurement, its allegations of specific facts are hardly sufficient to sustain the general allegations of actual as distinguished from constructive fraud. The specific facts as alleged go to show that if the plaintiff in the foreclosure suit had exercised a reasonable degree of diligence in making inquiries, it would not have been able to find that the defendant in that suit, the plaintiff here, had a complete set of officers and an office for the transaction of business located in the City of Miami in the adjoining County of Dade, as shown by annual reports on file with the Secretary of State, made under Chapter 14677, Laws of 1931.

In support of this contention, it is alleged that plaintiff in the foreclosure suit only applied to the Secretary of State to ascertain whether or not the defendant corporation had

complied with Sections 4257 and 4259 of Comp. Gen. Laws (requiring corporations to designate an office or place of business, or agent for the service of process), to which inquiry the reply was in the negative, and a certificate in due form made by the Secretary of State to that effect, was filed in the cause, whereas if the plaintiff in foreclosure suit had asked the Secretary of State to furnish it the names of the officers of the defendant corporation it could have obtained them, as this information was on file in the Secretary of State's office, as above set forth, by reason of reports filed under said Chapter 14677, which requires corporations to file annual reports and pay annual stock taxes, which annual reports shall give the names and addresses of their officers and of their resident agent upon whom process may be served.

The Sheriff's return, made under Section 4256 C. G. L. was to the effect that the officers and agents of the defendant corporation were "unknown." This has been held sufficient under that section to form a basis for constructive service. Fowler v. Chillingworth, 113 So. 667, 94 Fla. 1. If false, there was a remedy on the Sheriff's bond. Lewter v. Hadley, 68 Fla. 131, 66 So. 567. If the application or effect of Section 4256 C. G. L. has been to some extent repealed or modified by the Act of 1927 above referred to, as to service of process upon corporations which have complied with the provisions of that Act (now Sections 4257 and 4259, Comp. Gen. Laws), it could hardly be contended that Section 4256 has been repealed or modified, as respects the clause here in question, in so far as it affects corporations which have not complied with the provisions of the later Act of 1927, now appearing as Sections 4257 and 4259 C. G. L. But complainant in the foreclosure suit, appellee here, claims that it complied fully with both statutes

and that the service by publication was justified under either or both.

Section 4261 C. G. L., being Section 5 of Chapter 11892 of the Acts of 1927, provides *inter alia* that where a corporation has failed to comply with certain requirements of Section 4257 or of Section 4259, and there shall be filed in any pending cause a certificate of the Secretary of State that the place of business or domicile of said corporation, or agent upon whom process may be served, has not been designated under either of said sections, the clerk of the court, if the court has a clerk, and if not, the judge thereof, shall make an order of publication as therein prescribed. In this case, the complainant in the foreclosure proceeding complied with the statute by filing a certificate of the Secretary of State, which I think meets the requirements of the statute, and the Circuit Judge himself made the order of publication. The certificate and order of publication were both *filed* on the same day. The Judge's order was dated the day before the date of filing, but I think the presumption should be indulged, in favor of the validity of the court's order, that the certificate had been filed with or presented to the Judge on or before the signing of the order of publication, as both the certificate and order were filed in the clerk's office on the next day after the order was signed.

It is also contended by appellant that the Circuit Judge had no authority under the statute to make the order, as his court has a clerk. But surely the Judge of a court of general jurisdiction has the power to make an order which the clerk, a ministerial officer, has the power to make.

However, these procedural questions were raised by the motion which the appellant filed in the original suit, and

were decided adversely to appellant, and are now *res judicata.*

Indeed, said motion, in general terms, charged both the complainant in foreclosure and the sheriff with lack of due diligence in that complainant failed to make sufficient inquiry before resorting to substituted service, and in that the sheriff likewise failed so to do before making his return on the summons that the officers of the appellant corporation were unknown. The motion referred to covered in brief form most of the grounds set out in the bill to impeach the decree, though the latter goes into more detail on some points, and adds some new allegations, and charges that such alleged lack of due diligence amounted to, or was the result of, fraud.

As the statute of 1927 (Sec. 4257, *et seq.,* C. G. L.) authorizes service by publication upon corporations which have not complied therewith, and as the certificate of the Secretary of State filed in court under Section 4261 C. G. L. showed that the appellant corporation had not so complied, appellee was, by the express language of the statute, at least *prima facie* entitled to obtain constructive service by publication upon appellant as therein provided, without making inquiry for information filed under Chapter 14677, and, publication having been made in accordance with said statute (See 4261 C. G. L.), appellee was also *prima facie* entitled under the language of the statute to the decree *pro confesso* which followed. See Section 4262 C. G. L.

While the statute of 1927, under which constructive service was obtained, says nothing on the subject, we are nevertheless satisfied that no person or corporation is entitled to resort to that statute to obtain substituted service upon a corporation which has not complied with the statute, when he knows, or in the exercise of reasonable diligence could

have known, that personal service upon such defendant could be obtained. Any other construction would render the statute unconstitutional. Service by publication by one party upon another should never be resorted to in any case where by the exercise of reasonable diligence actual personal service can readily be secured.

In McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, this Court, speaking through Mr. Justice STRUM, said:

"While allegations of a categorical nature which follow the words of the statute are sufficient as a predicate for the issuance of the order of publication, the chancellor is not thereby precluded from requiring appropriate proof of those allegations, as of any other allegations, as a prerequisite to the entry of a decree. What and how much evidence the court shall require to satisfy it upon the question of due diligence in these matters rests largely with the court granting the order. Extraordinary steps to ascertain the whereabouts of the party are not required. But judgments which exclude persons from any interest in or lien upon land should not be rendered without actual notice, when by the exercise of reasonable diligence actual notice can be given. Reasonable diligence in such matters is an honest effort, and one appropriate to the circumstances, to ascertain whether actual notice may be given, and, if so, to give it. Such effort, however, need not embrace a search in remote parts of the State (Jacob v. Roberts, 223 U. S. 261, 32 S. Ct. 303, 56 L. Ed. 429) ; and it is not essential that all possible or conceivable means should be used. But the effort should usually extend to inquiry of persons likely or presumed to know the facts sought." * * *.

"From these cases, and others to like effect, we conclude that in suits of this nature, where personal service cannot be effected after the exercise of reasonable diligence and an

honest and conscientious effort to do so, appropriate to the circumstances, a reasonable method of imparting notice by publication which affords the defendant reasonable opportunity to receive the notice and present his defense, having reference to the character of the suit, and the probable place of residence of the defendant, is due process of law, provided the requirements of the statute be strictly followed."

See also Minick v. Minick, 111 Fla. 469, 149 So. 483; Balian v. Wekiwa Ranch, 97 Fla. 180, 122 So. 559; State, ex rel. Woods-Yound Co., v. Tedder, 103 Fla. 1083, 138 So. 643; Sharman v. Bayshore Investment Co., 99 Fla. 193, 126 So. 282.

It is also alleged that at the time the foreclosure suit was begun, there was conspicuously placed on the front of the dwelling on said lot, a sign, which in bold and legible lettering recited that the premises were for sale, and gave as the name of the agent for the owner thereof Investment & Management Corp., 139 N. E. First Street, Miami, Florida. That if inquiry had been made at the office of said agent corporation, so named on the sign, appellee could have ascertained that the directing officer of said corporation was also an officer of appellant, Smetal Corporation, the owner of the property, and that said agent's address was likewise the office address of the owner corporation. This allegation in the opinion of the majority of the Court was sufficient of itself to authorize the vacation of the prior decree on the ground that resort to constructive service was not justified, because of neglect to make due and reasonable inquiry.

It is further alleged that the order of publication was published in a paper published at Pompano, which, among the newspapers published in the county, was a relatively

obscure one, and which could have been selected for no other purpose than to further the intent of the plaintiff in the foreclosure proceeding that the pending of the suit should not come to the attention of Smetal Corporation.

To sustain the sufficiency of a bill to impeach a decree on the ground that it was procured by actual fraud, the allegations of fact must be of a clear, unequivocal and convincing character. Indeed, this rule applies whenever fraud is made the basis of relief prayed or defense set up. But in so far as the bill was based on a constructive fraud, that is failure on appellee's part to use reasonable diligence to ascertain the officers or agents of the corporation and their whereabouts before resorting to constructive service by publication, especially in failing to make the inquiry indicated by the sign on the house, the bill had equity. In this case most of the allegations, except this one, based on lack of proper inquiry and errors in procedure in the foreclosure case, had really been foreclosed by appellant's motion, which was filed in the original suit in the court below, and appellant's failure to appeal from the adverse ruling thereon, but the one allegation above referred to, when considered in all its connections, was enough to call for vacation of the prior decree.

I am authorized to say that Mr. Chief Justice WHITFIELD concurs in the views hereinabove expressed.

The views of Mr. Presiding Justice ELLIS are expressed in his separate opinion, which is concurred in by Mr. Justice TERRELL.

The result is that a majority of the Court are of the opinion that in view of the particular facts of this case, as made by the allegations of the bill, the bill had equity, and that the order dismissing the same for want of equity was erroneous.

Reversed and remanded.

WHITFIELD, C. J., and ELLIS and TERRELL, J. J., concur.
BUFORD and DAVIS, J. J., dissent.

ELLIS, P. J. (concurring).—West Lake Investment Company, a corporation, obtained a final decree in the Circuit Court for Broward County against Smetal Corporation, a Florida corporation, on February 8, 1934, in a suit by the West Lake Company to "foreclose a tax deed" which had been issued to it for a certain lot in Hollywood Lakes Section in Broward County. The lot, prior to the issuing of the tax deed, was the property of the Smetal Corporation.

The decree was for the sum of $489.31, and costs. The order of sale was published for three weeks and on March 6, 1934, the Special Master reported that the land had been sold to the West Lake Company for the sum of $650.00. On the same day an order was made confirming the sale and Master's deed was executed to the West Lake Company. So at the conclusion of that procedure the West Lake Company had both a tax deed and a Master-in-chancery's deed based upon the tax deed to the lot in Broward County.

On May 3, 1934, two months and twenty-five days after the final decree, the Smetal Company exhibited its bill in the Circuit Court for Broward County against the West Lake Company to invalidate the orders and decrees of the Circuit Court in the tax deed foreclosure suit. The grounds urged were that the court was without jurisdiction to enter the orders and decrees, and that the proceedings adopted by the complainant West Lake Company in that case constituted a fraud upon the court and the Smetal Company.

The bill of complaint is a prolix document of many unnecessary but nevertheless related allegations of fact. The substance of them is that the Smetal Company is a Florida

corporation with its principal office and place of business in Miami, Dade County, Florida; that no service of process in the tax deed, foreclosure suit was made on it; that the orders and decrees in the case rested upon an unauthorized substituted service of process by publication; that the Smetal Company had no notice of the suit and knew nothing of the proceedings until after the execution of the Master's deed when the same was exhibited to the Smetal Company's tenant who was in possession of the land and who was requested by the West Lake Company to vacate and surrender possession to it; that the requirements of Chapter 11829, Laws of 1927, Section 4261 C. G. L. 1927, were not observed in obtaining the order for substituted service of process upon the Smetal Company in the following particulars: (a) no certificate of the Secretary of State was filed at the time when the order of publication was made; (b) that the order was made by the Judge instead of by the Clerk of the Court; (c) no other statute than the one mentioned exists in the State under which service of process by publication could be obtained upon the Smetal Company; that the failure to obtain service of process upon it was due to the failure of the West Lake Company to make "a reasonable, conscientious or honest attempt" to obtain personal service upon the Corporation through its officers; that information sufficient to advise the West Lake Company of the names and addresses of the officers or agents of the Smetal Company upon whom service of process could have been made to bind the Corporation could have been easily obtained; that a sign was at the time of the commencement of the suit located conspicuously on the lot on which a two-story dwelling was built which sign in bold and legible letters advised all persons that the property was for sale by the owners and gave the name of the agent and its address

in the City of Miami; that such address was also the office address of the Smetal Company and that of the vice-president, who was active in the management of the Company's business affairs; that the president of the Corporation also resided in Miami and had an office at the same address, and that the vice-president was the resident agent of the Corporation and appointed for the purpose of accepting service of process upon the Company.

Other allegations were made which tended to show that the West Lake Company by its agents pursued the course it did relying upon a strict technical failure of the Smetal Company to comply with the requirements of Chapter 11829, *supra,* in order to gain the advantage which obtaining a decree of foreclosure upon the tax deed without notice to the Smetal Company would bring by enabling the West Lake Company to secure a valuable property worth about twenty-six hundred dollars for the sum of about six hundred dollars; that such course was pursued with intention to defraud the Smetal Company, obtain the decree by fraud in not revealing to the court the knowledge which the West Lake Company had of the Smetal Company, its place of business, officers and agents and persons residing in Florida upon whom service of process would bind the Company; that the West Lake Company's request of the Secretary of State for the certificate required under Chapter 11829, *supra,* was so framed as to direct that officer's attention only to the provisions of said Chapter 11829 and to certify that the Smetal Company had not under the provisions of that chapter designated an agent or officer upon whom service of process in this State might be made to bind the Smetal Company and they had deliberately ignored the provisions of a later statute, Chapter 14677, Laws of 1931, which required all corporations to file with the Secretary of State

on July 1st of each year the names of its officers and their post office addresses, the home office of the corporation, and the "name and address of the resident agent upon whom service of process may be made" with which Act the Smetal Corporation had complied.

Many other allegations evidentiary of the alleged deliberate purpose of the West Lake Company to obtain the decree of foreclosure by fraud and deceit perpetrated both upon the court and Smetal Company were made which it is unnecessary here to repeat.

The West Lake Company in May, 1934, interposed its answer in which it incorporated a motion to dismiss the bill. On May 31, 1934, Smetal Corporation filed its amended bill in which it amplified with great particularity the substance of the allegations contained in the original bill. A motion to dismiss the amended bill was granted by the chancellor from which order Smetal Corporation appealed.

I think the order should be reversed not only because the West Lake Company did not strictly follow the procedure prescribed by Chapter 11829, *supra,* to obtain a valid order of publication of service, but also because the Corporation complainant in the foreclosure proceedings did not maintain clean hands in the matter of substituting publication of service for personal service of the summons in chancery upon the Smetal Company. In other words, according to the allegations of the amended bill admitted by the motion to dismiss the complainant pursued a devious and deceptive course in order to defeat the right of the Smetal Company to be brought into court by the orderly process of a writ duly served upon it, whereby its day in court would be certainly secured, and because the court was without jurisdiction to enter the orders and decrees because it had not acquired jurisdiction of the Smetal Company.

Notice to a party whose rights are to be affected by judicial proceedings is an essential element of due process of law. Riverside & Dan River Cotton Mills v: Menefee, 237 U. S. 189, 35 Sup. Ct. Rep. 579, 59 L. Ed. 910; Simon v. Southern R. Co., 236 U. S. 115, 35 Sup. Ct. Rep. 255, 59 L. Ed. 492; Iowa Cent. R. Co. v. State of Iowa, 160 U. S. 389, 16 Sup. Ct. Rep. 344, 40 L. Ed. 467.

That doctrine is too firmly embedded in American and English jurisprudence to require citation of authority. The same doctrine applies to corporations. 14 a C. J. 800; Sharman v. Bayshore Inv. Co., 99 Fla. 193, 126 South. Rep. 282; 21 R. C.' L. 1334.

The complainant in the tax deed foreclosure proceeding relied upon the terms of Chapter 11829, *supra,* to substitute service of process by publication for the actual notice of the pendency of the action to which the Smetal Corporation would be entitled had it complied with the statutory requirements as to the designation of a person upon whom process may be served. It is undoubtedly true that domestic corporations may be subject to reasonable rules and regulations in that regard, yet they should not be deprived of their property without due process of law. Statutes such as Chapter 11829, *supra,* are intended to substitute service' of process by publication when no officer or agent of the corporation can be found in the State upon whom personal service of the process may be made to bind the corporation. Bernhardt v. Brown, 118 N. C. 700, 24 S. E. Rep. 527, 36 L. R. A. 402; Pinney v. Providence Loan and Inv. Co., 106 Wis. 396, 82 N. W. Rep. 308, 50 L. R. A. 577.

The statute, Chapter 11829, *supra,* virtually. authorizes suit against a domestic corporation without service of process where the corporation fails to file its list of officers

or names of agents upon whom service of process may be made, which is but another name for forfeiture or confiscation of the corporation's property. The constitutional guaranty that no State shall deprive any person of life, liberty or property without due process of law, U. S. Const. Amend., Art. XIV, Sec. 1, was intended to secure the individual from the arbitrary exercise of the powers of government unrestrained by the established principles of private rights and distributive justice. See United States v. Cox, 18 How. 15 L. Ed. (300 text) 299.

Mr. Justice FIELD said that " 'due process of law' " means due process "which, following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought." See Hagar v. Reclamation Dist. No. 108, 111 U. S. 701, 28 L. Ed. 569, 4 Sup. Ct. Rep. 663, text 667.

So in line with such conception of the fundamental law of due process this Court has held that constructive service statutes must be strictly complied with before the Court can acquire jurisdiction through it over the defendant who by such method is directed to appear; that if personal service could be effected by the exercise of reasonable diligence substituted service is unauthorized. The plaintiff should employ reasonably the knowledge at his command; should exert an honest and conscientious effort to acquire information necessary to enable him to effect personal service. See West 132 Ft., et al., v. City of Orlando, 80 Fla. 229, 91 South. Rep. 369; Mabson v. Mabson, 104 Fla. 162, 140 South. Rep. 801; Palatka Bldg. & Loan Assn. v. Levey, 109

Fla. 293, 147 South. Rep. 212; McDaniel v. McElvy, 91 Fla. 770, 108 South. Rep. 820; Tibbetts v. Olson, 91 Fla. 824, 108 South. Rep. 679.

It would seem to follow therefore in the light of the law's carefully chartered course to protect a person against the deprivation of his property without due process of law, that is to say, without affording him an opportunity to be heard respecting the judgment to be entered that one who relies upon a statute which substitutes service by publication for personal or actual service of the process upon the defendant, should follow the strict letter of the statute in order that its enlivening spirit should also be observed.

The complainant did not do that in this case. When the order of publication was made there had not been filed in the cause a certificate of the Secretary of State that the place of business or domicile of the Corporation had not been designated under either Sections 1 or 3 of the Act, Chapter 11829, *supra,* but a certificate was filed after the order was made that the Corporation had not filed in the office a certificate in " 'compliance with either Section 4257 or 4259 of the Compiled General Laws of the State of Florida, 1927, relative to designating an office or place of business or domicile for the service of process and naming an agent to accept service.' " That was not equivalent to a statement that the "place of business or domicile of said Corporation has not been designated either under Section 1 or Section 3 of the Act. The certificate was merely the Secretary's conception of what constituted a compliance by the Corporation with the terms of the Act.

What the statute required was a certificate that the "place of business or domicile of the Corporation has not been designated." A definite, certain and unqualified statement of a fact, not the Secretary's conception of what constituted a

failure to comply with the law. Again, the order of publication was made by the Judge of the Court, although there was a Clerk. The statute requires the Clerk of the Court in which the cause shall be pending to make the order against the Corporation, and if there should be no Clerk, that is, if the Court have no Clerk, then the Judge shall make the order.

We have nothing to do with the reason of the statute, which required the Clerk to make the order and if there should be no Clerk, then the Judge should make it. It is sufficient that the Legislature required it, and as that drastic remedy was sought against the corporation which could have been served with process, which had designated a place of business, names of officers and agent upon whom process might be served, and that information was on file in the office of Secretary of State filed under the provisions of a later Act, Chapter 14677, Acts of 1931, *supra*, the strict letter of the statute, Chapter 11829, *supra*, should in the spirit of the Act and justness of the judgment sought, have been followed.

In addition to all of this, according to the allegations of the bill, the complainant West Lake Company knew that the Smetal Corporation was a domestic Corporation; that its principal place of business was in Miami; the names of its officers and places of address of both the Corporation and its officers and the name of the person which the Corporation had designated to accept service or could have acquired with very little effort such information. It sought rather to invoke a technical penalty against the Smetal Corporation and jeopardize its constitutional right to due process, to the end that the complainant by concealing the information which it possessed, or could have easily obtained, further its financial interests at the cost of the defendant.

So I am of the opinion that the order dismissing the bill should be reversed.

TERRELL., J., concurs.

DAVIS, J. (dissenting).—It is conceded that Chapter 11829, Acts of 1927, if a constitutional law of this State as it must be conceded to be absent a conviction to the contrary beyond a reasonable doubt, authorizes service by publication under Section 5 of the Act whenever the corporation has defaulted in compliance with that Act by failing and refusing to designate an agent upon whom direct service of a summons may be made.

That statute has been in effect for practically nine years and many thousands of suits have been brought and prosecuted to judgment or decree under it. In passing it, the Legislature recognized the urgent need for such a law as the result of the collapse of the real estate boom which left in its wake literally thousands of domestic corporations whose location and personality consisted of little more than a corporate name. Such corporations had executed mortgages by the score which required foreclosing and to enable legal proceedings to be instituted and carried on against such corporation, the statute was prepared and passed largely at the instance of one of the leading local Bar Associations that caused it to be prepared and submitted to the Legislature as a matter of almost absolute necessity in order to enable the Courts to function against the myriad of ubiquitous corporate mortgagors whose place of business was never more substantially evidenced than by the hotel room number of the "fly by night" promoters who obtained charters for such corporations.

To now fritter away the substance of the statute by a construction which completely frustrates its purpose and intent, and casts doubts and suspicions upon the supposed

validity of thousands of court decrees and judgments ren-
dered on the same basis as the one here attacked, is in my
humble opinion unwarranted, and I therefore respectfully
dissent from the opinion of Mr. Justice ELLIS in so far as
his opinion deals with and construes Chapter 11829, Acts
of 1927, as requiring service of process to be made on do-
mestic corporations other than in literal and exact com-
pliance with the language of the Act itself, which being
constitutional, is adequate authority for the institution and
conduct of legal proceeidngs in accordance with its precise
terms, and the service of legal process by publication in its
compliance with what the Act requires of it in order to be
entitled to service in a different manner.

BUFORD, J., concurs.

## ON REHEARING.

BROWN, J.—Upon the original hearing of the appeal in
this case, a majority of the Court were of the opinion that
the decree appealed from dismissing appellant's bill, should
be reversed because the bill so dismissed had equity, in that
it showed that the appellee, West Lake Investment Co., had
resorted to constructive service by publication against the
defendant in the foreclosure suit, a Florida corporation,
under Sections 4257-4261, Comp. Gen. Laws (Sections 1
to 5 of Chapter 11829, Acts of 1927), whereas under the
facts alleged in said bill, by the exercise of reasonable dili-
gence it could readily have obtained personal service upon
said Smetal Corporation in the manner contemplated by the
statute providing for the service of process upon corpora-
tions by personally serving the same upon their officers or
agents. (Section 4251 C. G. L.)

Mr. Chief Justice WHITFIELD and the writer were of the
opinion that the sign upon the premises, as alleged in the

bill, was alone sufficient, in connection with other facts therein alleged, to show that the plaintiff in the foreclosure suit could readily have ascertained the information necessary to have enabled it to perfect personal service upon the officers of the defendant corporation, while Mr. Presiding Justice ELLIS, and Mr. Justice TERRELL held that there were a number of other circumstances alleged in the bill which tended to show that "the West Lake Investment Company, by its agents pursued the course it did, relying upon a strict technical failure of the Smetal Company to comply with Chapter 11829, *supra,* in order to gain the advantage which obtaining a decree of foreclosure upon the tax deed without notice to the Smetal Company would bring by enabling the West Lake Company to secure a valuable property worth about $2,600.00 for the sum of $600.00; that such course was pursued with intention to defraud the Smetal Company, obtain the decree by fraud in not revealing to the court the knowledge which the West Lake Company had of the Smetal Company, its place of business, officers and agents, persons residing in Florida, upon whom service of process would bind the Company"; and pointing out some of the facts and circumstances alleged in appellant's bill which they deemed sufficient to justify these conclusions.

All four of the Justices who held that the decree appealed from should be reversed were of the opinion that under the well settled construction of the due process clauses of both the Federal and State Constitutions constructive service by publication could not be resorted to by the exercise of reasonable diligence actual personal service of process could readily be secured, and that it was not the intention of the Legislature that Chapter 11829 of the Acts of 1927 should be so construed as to deny to corporations the benefit of

this constitutional right; that to construe the statute otherwise would render it unconstitutional.

Justices ELLIS and TERRELL were also of the opinion that under the generally recognized rule that constructive service statutes must be strictly complied with, the service on the Smetal Company was also fatally defective because the requirements of Chapter 11829 were not observed in that, according to the record, (a) no certificate of the Secretary of State had been filed when the order of publication was made; (b) that the order was made by the judge instead of the clerk of the court, and (c) no other statute than the one mentioned existed in the State under which service by publication could have been obtained against the Smetal Company.

In the dissenting opinion of Mr. Justice DAVIS, concurred in by Mr. Justice BUFORD, it was held that the statute of 1927 was adopted by the Legislature shortly after the collapse of the real estate boom in order to enable the courts to function "against the myriad of ubiquitous corporate mortgagors whose place of business was never more substantially evidenced than by the hotel room number of the 'fly-by-night' promoters who obtained charters for such corporation"; that to so construe the statute as to cast doubt upon the supposed validity of thousands of court decrees founded, like the foreclosure decree here in question, upon constructive service as provided for by this statute, would be unwarranted, the statute being constitutional; that to so construe the statute as to require service to be made on domestic corporations other than in literal and exact compliance with the language of the Act itself would not be justified where as here the corporation has defaulted in its compliance with what the Act requires of it in order to be entitled to service in a different manner.

The grounds of the petition for rehearing filed by appellees not only incorporate the points made in the dissenting opinion of Mr. Justice DAVIS, but also contends that the Court overlooked the fact that service of process was validly obtained under Section 4256 C. G. L., thus rendering the purported defects of service under Section 4261 C. G. L. wholly immaterial; and that as service under Section 4256 and the return thereon was wholly within the control of the Sheriff, no fraud or lack of diligence could be imputed to the plaintiff; and that the bill did not attempt to impeach the *bona fides* or validity of the sheriff's return.

The petition also contends that the lower court must be presumed to have gone into and adjudicated the question of due diligence at the time of entering the order of publication, and that this was not denied by the bill.

It is also contended that it was not alleged in the bill that Hulda M. Elsasser and her husband had any knowledge of any alleged fraud or defects in the service of process, and must therefore be presumed to have been innocent purchasers for value from the West Lake Investment Co., and entitled to rely upon the record of said cause as it existed at the time of their purchase, inasmuch as the service was valid upon its face and is now attacked solely upon matters *de hors* the record.

Taking up this last contention first, there is no allegation in the bill that Mrs. Elsasser or her husband paid any valuable consideration for the deed made to them by the West Lake Investment Co. The bill merely alleges that on March 8th, 1934, which was three days after the Master's sale and two days after the Master's deed to the West Lake Company was executed, the West Lake Company "executed and delivered a deed to said premises to the defendant, Hulda M. Elsasser," which deed was recorded that same day.

The bill also shows that at that time the premises were in the actual possession of the Smetal Corporation through its tenant, who had rented the property from the Smetal Company and moved into it several days prior to the making of said deed; and that the Smetal Company's first knowledge of the attempt to foreclose on its property was when its tenant in possession notified said Company that Mrs. Elsasser had demanded possession of the property and that he, the tenant, had later been ordered to show cause before the Court why a writ of assistance should not issue to divest him of his possession.

The petition for rehearing impliedly admits that Mrs. Elsasser was chargeable with notice of any lack of jurisdiction of the parties or subject matter apparent on the face of the record of the cause. (See 35 C. J. 82.) An inspection of the record would have disclosed to her that the certificate of the Secretary of State had not been filed, as required by Sec. 4261 C. G. L., when the order of publication was made; which, in the opinion of a majority of the Court, was sufficient to show, on the face of the record, that the order of publication was illegally issued. The rule of *caveat emptor* applies in its utmost vigor and strictness to those claiming under judicial sales. See opinion by Mr. Justice BUFORD *in* Lindsley v. Phare, 115 Fla. 454, 155 So. 712, and authorities cited.

As to the contention that the Court will be presumed to have gone into the matter of due diligence before issuing the order of publication, and that it was not denied by the bill to vacate the decree that the Court had done so, this presumption would not be any answer to those allegations of the bill which show a failure to comply with the conditions precedent expressly prescribed by the statute which must be complied with before an order of publication can

be legally granted. Nor would such presumption prevent the defendant from showing the true facts, where, as here, the record is silent on the question of due diligence and there is nothing to indicate that the trial court considered the matter. The presumption alluded to, where the record is silent, is at most a *prima facie* presumption and not a conclusive one in cases of direct as distiguished from collateral attack, especially when promptly brought, as was done in this case. Furthermore, in so far as the publication was attempted to be made under the 1927 Act, that statute (Sec. 4261 C. G. L.) provides that the *clerk* shall make the order of publication, and as the clerk cannot exercise judicial power, but can only act ministerially, the basis for the presumption of a judicial determination of the question of due diligence before service by publication was accorded, under this particular statute, does not exist. The fact that the judge acted in place of the clerk in making the order here involved, if indeed he could lawfully so act, would not aid appellee in this connection, because the statute imposes the duty on the clerk, in courts having a clerk, and thus fixes the character of the act as a ministerial one. People v. Bush, 40 Cal. 344. This is another reason why the statute should be strictly construed.

Now, as to the claim that service was validly obtained under Section 4256 C. G. L., thus rendering the purported defects of service under Section 4261 C. G. L. immaterial, it will be noted that said Section 4256 provides that when process against a corporation *cannot be served* "owing to the failure of such domestic or foreign corporation to elect officers or appoint agents, or the failure of such foreign corporations to have within the State an officer or agent upon whom process can be served, or the absence from the State for the period of six months before the issuing of the

writ of the agents or officers of any domestic or foreign corporation, *or because the officers or agents of any domestic corporation are unknown,* it shall be the duty of the officer to return said writ, with the cause for his inability to serve on same, and upon the return of said writ as aforesaid, the *judge* of the court from which the same shall have issued" shall make order of publication as therein provided.

Is the statute just quoted from repealed by the Act of 1927, Chapter 11829, now appearing as Section 4257 to 4271, inclusive, of the Compiled Gen. Laws of 1927? Evidently such was not the express legislative intent, for Section 9 of Chapter 11829 (4265 C. G. L.) says: "This law shall be deemed cumulative of all other provisions of law, and nothing herein contained shall prevent the service of process being made upon any corporation in accordance with any statute now in force in the State of Florida."

But certainly the older statute, Section 4256 C. G. L., must in certain respects be construed in connection with other related statutes, including the statute of 1927, as to service of process made since the later Act became effective. Hence the sheriff's return to the effect that "the officers or agents of the Smetal Corporation, a Florida corporation, are *unknown*" would certainly not, on proper attack, have afforded any legal basis for an order of publication, if, in fact, the Smetal Corporation had complied with the Act of 1927 by filing with the Secretary of State a certificate designating the location of its office or place of business, and keeping posted therein a sign giving the names of the officers and agents of the corporation upon whom process could be served, and keeping at such office or place of business within certain hours of the day one or more of such designated officers or agents, or, in the alternative, desig-

nating the office of the clerk of the Circuit Court as its office and the clerk as its agent for the service of process. The officers and agents of the Smetal Corporation may actually have been "unknown" to the sheriff personally, when the summons was lodged with him, but if the corporation had complied with the Act of 1927, certainly its officers and agents would not have been "unknown" in the sense in which that word is used in Section 4256. As so used, the word means unknown after due and reasonable inquiry has been made. Preston v. Bennett, 68 S. E. 45, 47, 67 W. Va. 392; Bonner v. Runge, 225 S. W. 287; Libhart v. Lawrence, 120 Pac. 215. The mere fact that at the time process is placed in the hands of a sheriff for service upon a corporation, he may himself be entirely ignorant of the existence of such corporation or the names or addresses of any of its officers or agents, would not justify or legally authorize such sheriff to at once make a return that the officers or agents of the corporation were "unknown." A sheriff is not presumed to know and carry in his head the names and addresses of the officers or agents of· all the thousands of corporations located or doing business in this State, or even of those in his own city or county. So the statute does not mean merely "unknown" to the sheriff individually. Before making a return that such officers or agents are "unknown" the officer must make reasonable inquiry and exercise due diligence to ascertain the facts. And as the plaintiff seeking the service is charged with knowledge that the laws of this State have for years required all corporations incorporated in this State to file with the Secretary of State a proposed certificate of incorporation or charter designating the county in which the principal office or place of business of the corporation shall be located, the exercise of due diligence on the part of the plaintiff, under

said Section 4256, would require him to make some inquiry of the Secretary of State as to the domicile of such domestic corporation before placing the summons in the hands of the Sheriff of the *wrong* county as was done in this case.

The bill in this case charged that the sheriff by his deputy had made his return on the summons on December 27, 1933, the same day the summons was issued. This precipitate action, while not sufficient in itself to repel the presumption that the sheriff had made due inquiry, is highly indicative of the truth of the general allegation of the bill that the order of publication was made before there had been any exercise of reasonable inquiry and due diligence to ascertain whether personal service could be secured on the officers or agents of the Smetal Corporation.

This summons was not returnable until the rule day in February, that is, February 5, 1934. Although the summons was thus subject to service at any time prior to midnight of January 26, 1934, the sheriff made his return on the day it was issued, and it was filed the following day, thus making it impossible (under this writ) for him thereafter to serve the process even should the officers of the defendant corporation have meanwhile become known to him. The making and filing of the return necessarily indicated that the officer had no intention of making any further effort to serve the summons. And according to the record as alleged in the bill, the order of publication was made on the same day the sheriff made his return, December 27, 1933, and hence was made the day before the return was filed in the clerk's office, which was done on December 28, 1933.

A summons may be served at any time prior to ten days before the rule day to which it is made returnable. Here the sheriff made his return thirty days before the expi-

ration of the time within which it could lawfully have been served. As Section 4256 C. G. L. requires a sheriff's return of non-service upon a summons as a prerequisite to the issuance of an order of publication, it is very earnestly contended in the brief permitted to be filed by *amici curiae* that if a return is made prior to the expiration of the time within which the summons might legally have been served, and obviously made prematurely for the· purpose of permitting its use as a basis for an order of publication, such a return does not meet the requirements of the statute; that the statute must be read in the light of the duty imposed by law upon the sheriff to use all reasonable diligence to make actual service of the process from the time it comes into his possession until the expiration of the time within which that process may be lawfully served. That the only reason for requiring a sheriff's return as an essential prerequisite to the issuance of the order of publication is that such a return (when lawfully made) constitutes some evidence that the defendant cannot be reached by the usual and ordinary process of the court. That here it is obvious from the unusual and precipitate method of handling the summons that no real effort was made to serve it, and that the only reason for delivering it to the sheriff was that he might make a return which could be used as a basis for an order of publication.

In support of their contention that the sheriff's return of inability to serve the summons could not have been lawfully made before the expiration of the period within which it could lawfully have been served, the following authorities are cited: Section 5 of the 1931 Chancery Act; Rule 8 of Circuit Court Rules then in force; Cummings v. Brown (Mo.) 81 S. W. 158; Himmelberger Harrison Lumber Co. v. McCabe, 220 Mo. 154, 119 S. W. 357; Plum v. Bateman,

2 App. D. C. 156; Thompson v. Tanner, 286 Fed. 980, 53 App. D. C. 3; Vance's Heirs v. Maroney, 4 Col. 47; Sween v. Gibson (Mich.) 83 N. W. 407; Pinkey v. Pinkey (Iowa) 4 Green 324; Clayton v. Clayton's Heirs, 4 Col. 410; Williams v. Sands (Mo.) 158 S. W. 47. But we do not deem it necessary to decide this particular question in this case, as it was not alleged in the bill as one of the grounds for vacating the foreclosure decree.

Strictly speaking, there is no such thing as personal service upon a corporation. Considered apart from the individual human beings who compose its stockholders, officers and agents, and by and through whom it acts, a corporation is a mere incorporeal legal entity created by government. So when we speak of personal service upon a corporation, we mean personal service upon its officers or agents. Thus Section 4251 C. G. L. provides that process against a corporation may be served upon its officers, in the order named in the statute, and in the absence of such officers, upon a business agent resident in this State, or in the case of a foreign corporation, upon any agent transacting business for it in this State; and the statute contemplates that this kind of service shall be made when reasonably possible to do so. But the beneficial ownership of corporations is in natural persons, and a corporation is a *person* within the meaning of the due process and equal protection clauses of the Federal Constitution. 21 R. C. L. 1334; Liggett Co. v. Baldridge, 278 U. S. 105, 73 Law. Ed. 204; and cases cited. Our own decisions have frequently recognized this principle. See Seaboard A. L. R. Co. v. Simon, 56 Fla. 545, 47 So. 1001; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 287. If, for the reasons stated in Section 4256, process against any corporation "cannot be served" and the officer's return of the writ, for

a reason recognized by the statute, shows that to be the case, then, and not before, the judge of the court issuing the writ may make an order of publication. Or if, under Section 4261 C. G. L. (Section 5 of Chapter 11829) there shall have been filed in the cause a certificate of the Secretary of State showing that the place of business or domicile of such defendant corporation has not been designated either under Section 4257 or under Section 4259; or a certificate of the Secretary of State showing that the place of business or domicile of said corporation has been designated under Section 4257, together with a return of an officer authorized to serve process that service of process was attempted at such office and that such officer was unable to make service, either because said office was not kept open as provided in the Act, or that there was no officer or agent at such office upon whom service of process could be had; then, and not before, the clerk of the court in which such cause shall be pending, if said court have a clerk, and if not, then the judge thereof, shall make an order of publication as therein provided.

Assuming the validity of the statutes, and the sufficiency of the sheriff's return and also of the certificate of the Secretary of State, it yet remains that neither of these statutes, 4256 nor 4261, were strictly complied with in this case. According to the allegations of the amended bill, above referred to, the order of publication was made before either the summons with the sheriff's return thereon, or the certificate of the Secretary of State, had been filed in the court from which the writ issued, and in which the cause was pending. So, on the *prima facie* case as made by the amended bill, if the statutes are to be strictly construed, as they must be, the judge was without authority to make the

order of publication on the date it was made, December 27, 1933.

It is well settled in this jurisdiction that statutes authorizing constructive service of process by publication must be *strictly construed* and *fully complied with* in order to give a court jurisdiction of the person of the defendant. Shrader v. Shrader, 36 Fla. 502, 18 So. 672; Wyley v. Sanford Loan & Trust Co., 44 Fla. 818, 33 So. 453; Ortell v. Ortell, 91 Fla. 50, 107 So. 442; Tibbetts v. Olson, 91 Fla. 824, 108 So. 679; Reynolds v. Harrison, 91 Fla. 834, 106 So. 909; State v. Gray, 92 Fla. 1123, 111 So. 242.

Such strict construction is all the more important in view of the holding in this State that a personal judgment against a domestic corporation may be obtained upon service by publication. Clearwater Mercantile Co. v. Roberts, etc., Shoe Co., 51 Fla. 176, 40 So. 436. In that case this Court observed that: "The fundamental object of all laws relating to service of process is to give that notice which will in the nature of things most likely bring the attention of the corporation to commencement of the proceedings against it, and when legislation carries out this clear design it should not be stricken down by the courts."

Chapter 11829 of the Laws of 1927, properly construed, is a constitutional and valid statute. We have so held. See State, *ex rel.* Woods-Young Co., v. Tedder, 103 Fla. 1083, 138 So. 643. But it was recognized in that case that the statute should if possible be so construed as not to conflict with the constitutional guarantee of due process, in harmony with the rule that the Legislature will be presumed to have intended to enact a valid and constitutional law.

It may well be that one of the main objects which motivated the enactment of this statute of 1927 was to enable

the courts to deal more effectively with corporations whose incorporation had been secured by ubiquitous "fly-by-night" promoters, but nevertheless the Legislature made it applicable to *all* domestic corporations and also to *all* foreign corporations which had heretofore, or might thereafter qualify under the law to transact business in this State, except the corporations mentioned in Section 4270 C. G. L. We must therefore construe this statute, as we have construed all constructive service statutes which have been heretofore brought before this Court for construction, with reference to the due process clause of the Federal and State Constitutions; that is, as applying only to that class of cases in which actual personal service cannot be obtained by the exercise of due diligence. This construction is required by our own previous decisions, as well as by the decisions of the Federal Supreme Court. Tibbetts v. Olson, 91 Fla. 824, 108 So. 689; McDaniel v. McElvy, 91 Fla. 770, 108 So. 820; Goodrich v. Thompson, 96 Fla. 327, 118 So. 60; Balian v. Wekiwa Ranch, 97 Fla. 180, 122 So. 559; Sharman v. Bay Shore Inv. Co., 99 Fla. 193, 126 So. 282; Fowler v. Chillingworth, 94 Fla. 1, 113 So. 667; State, *ex rel.* Woods-Young Co.,. v. Tedder, *supra;* Minick v. Minick, 111 Fla. 469, 149 So. 483. See also in this general connection: Pennoyer v. Neff, 95 U. S.. 679, 24 L. Ed. 565; Wilson v. Seligman, 144 U. S. 41, 36 L. Ed. 338; Riverside Cotton Mills v. Menefee, 237 U. S. 189, 59 L. Ed. 910; Romig v. Gillett, 187 U. S. 111, 47 L. Ed. 97; Power Mfg. Co. v. Saunders, 274 U. S. 490, 71 L. Ed. 1165; 21 R. C. L. 1295. And in Brinkerhoff-Farris Trust Co. v. Hill, 281 U. S. 673, 74 L. Ed. 1107, it was held that a violation of the due process clause may not even be effectively accomplished by the State judiciary in the course of construing an otherwise valid State statute. Nor may a State ex-

act of a foreign corporation, as a condition precedent to permitting it to transact business within its limits, any waiver of the right to object to any statutory infringement of its rights under the Federal Constitution. Powers Mfg. Co. v. Saunders, *supra;* Terral v. Burke Construction Co., 257 U. S. 529, 66 L. Ed. 352.

If the statute should be construed as one designed to provide an easy and simple method whereby persons desiring to sue a corporation, although they may know where its place of business is and the names of one or more of its officers or agents, or by the exercise of reasonable inquiry and diligence could easily and readily obtain that information, could nevertheless obtain service of process by publication and secure a decree or judgment against the corporation without its knowledge, would be to so construe it as to be at variance with our previous decisions and to render the statute itself unconstitutional as a denial of due process. The constitutional guaranty of due process cannot be circumvented by any statute, no matter how artfully drawn. At the time the statute was adopted, the Legislature knew that this Court had plainly held that resort to constructive service by publication was predicated upon necessity, and that if personal service could be effected by the exercise of reasonable diligence, substituted service was unauthorized. See Tibbetts v. Olson and McDaniel v. McElvy, *supra,* both of which cases were handed down in May of 1926.

However, as was said in the case of McDaniel v. McElvy:

"The test, however, is not whether it was in fact possible to effect personal service in a given case, but whether the complainant reasonably employed knowledge at his command, made diligent inquiry, and exerted an honest and conscientious effort, appropriate to the circumstances, to

acquire the information necessary to enable him to effect personal service on the defendant."

And again in the same case it was very aptly and reasonably said:

"Extraordinary steps to ascertain the whereabouts of the party are not required. But judgments which exclude persons from any interest in or lien upon land should not be rendered without actual notice when by the exercise of reasonable diligence actual notice can be given. Reasonable diligence in such matters is an honest effort, and one appropriate to the circumstances, to ascertain whether actual notice may be given, and, if so, to give it. Such effort, however, need not embrace a search in remote parts of the State (Jacob v. Roberts, 223 U. S. 261, 32 S. Ct. 303, 56 L. Ed. 429) ; and it is not essential that all possible or conceivable means should be used. But the effort should usually extend to inquiry of persons likely or presumed to know the facts sought."

In Ryan's Furniture Exchange Inc., v. McNair, 120 Fla. 109, 162 S. 483, this Court, speaking through Mr. Justice DAVIS, said:

"The statutes relating to proceedings supplemental to execution have been held constitutional merely because no substantial rights were violated in their enforcement. But if in enforcing these statutes, due process is not observed, the proceeding is to that person a nullity. These statutes must be enforced so as to afford due process.

"In observing due process of law the opportunity to be heard must be full and fair, not merely colorable or illusive. Redman v. Kyle, 76 Fla. 79, 80 So. Rep. 300. Fair notice and a reasonable opportunity to be heard shall be given interested parties before a judgment or decree is rendered. Tibbetts v. Olson, 91 Fla. 824, 108 Sou. Rep. 679; McDaniel

v. McElvy, 91 Fla. 770, 108 Sou. Rep. 820, 51 A. L. R. 731; Fiche v. Householder Co., 98 Fla. 627, 125 Sou. Rep. 2. Due process of law means a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights. South Florida Trust Co. v. Miami Coliseum Corp., *supra*" (101 Fla. 1351, 133 So. 334).

Where there has been no abuse of the process of the Court which is provided by Chapter 11829 of the Laws of 1927, by resorting to service by publication when the plaintiff knew, or by reasonable diligence could have readily obtained the information upon which personal service could have been had, the constructive service provided by such statute, if obtained in accordance with its plain provisions, is sufficient to give the court jurisdiction and to sustain the validity of the court's decree based thereon against either direct or collateral attack. There need be no fear whatever that the numerous decrees against "fly-by-night" corporations which have been based upon constructive service obtained in accordance with this statute would be unsettled or disturbed by the decision in this case; because as to such corporations, which had not complied with the statute, and which had no legal domicile, i. e., no established office or place of business and the names and addresses of whose officers were not known and could not be obtained by reasonable inquiry, service by publication was and is fully justified under the due process clause as construed by both the State and Federal Courts. And even on a direct attack seasonably made, if the procedure outlined by the statute has been followed in obtaining service by publication, the *prima facie* validity of the court's jurisdiction and decree is thereby established, and cannot be disturbed unless the

party thus attacking its validity successfully carries the burden of showing that resort to such constructive service was an abuse of the court's process because, by the exercise of reasonable diligence, actual personal service of process could have been had.

But here we are dealing with another type of corporation, one which had an established office and a complete set of officers in the adjoining County of Dade, whose place of business, and the names and addresses of whose officers and of the resident agent upon whom service of process could be made had been filed with the Secretary of State under Chapter 14677 of the Acts of 1931, and which information could readily have been ascertained by the plaintiff in the foreclosure suit, according to the allegations of the bill. *Inter alia,* it appears from the bill that the deed, conveying this property sought to be foreclosed on, to the defendant in the foreclosure suit had been filed for record some months before in the county where the suit was brought and showed that the defendant was a corporation of Dade County; that there was a conspicuous "for sale" sign on the property which gave the Miami address of the owner's agent, as set forth in our original opinion; that the order of publication was not published in the county seat, but in an obscure paper in a small town in another part of the county; that these together with other allegations of facts, on the whole tend to support the allegations of the bill that constructive service was unnecessarily resorted to, not only without the exercise of even the ordinary diligence which the law requires, but with a studied effort to avoid obtaining the information which could readily have been obtained, and which would have rendered personal service easily obtainable.

There is some question as to whether the *form* and con-

tents of the Sheriff's return of non-service under Section 4256 was legally sufficient. In this connection, see Fowler v. Chillingworth, 94 Fla. 1, 113 So. 667; Rorick v. Stillwell, 101 Fla. 4, 133 So. 609; Romig v. Gillett, 187 U. S. 111, 47 L. Ed. 97; 21 R. C. L. 1295. Also, as to whether under Section 4261 C. G. L., the judge had the power and authority to make the order of publication. Also as to whether the filing of a report with the Secretary of State under Chapter 14677 of the Acts of 1931 showing the names and addresses of the officers and directors, the home office of the corporation and the name and address of the resident agent upon whom service of process may be made, which was on file before and when the suit was begun, was *per se* alone sufficient to show that due diligence was not exercised. See in this connection Sharman v. Bayshore Investment Co., 99 Fla. 193, 126 So. 282. But we deem the decision of these questions, as to which there is a division of opinion in the Court, unnecessary to a decision of this case.

But for the reasons above pointed out, the majority of the Court are of the opinion, considering all the allegations of the amended bill as a whole, there is equity in the amended bill and that the original decision of the Court reversing the order dismissing the same should on this rehearing be adhered to.

Original judgment of reversal confirmed and adhered to on rehearing.

ELLIS, C. J., and WHITFIELD and TERRELL, J. J., concur.
BUFORD and DAVIS, J. J., dissent.

DAVIS, J. (dissenting).—I adhere to my opinion previously filed in this cause dissenting to reversal of the decree appealed from. The opinion of Mr. Justice BROWN in effect .overrules our decision in Clearwater Mercantile Co.

v. Roberts, 51 Fla. 176, 40 Sou. Rep. 436, 120 A. S. R. 153; 4 L. R. A. (N. S.) 117, where it is said of our constructive service statutes as applied to corporations "we are dealing not with natural persons, who create the government, but with the fictitious entities called corporations, which are created by the government, deriving therefrom their very existence, with such limitations as the creating power may impose, except only such limitations as may be expressly or by clear implication, forbidden by its organic law or by Federal authority, by construing as limitations on our corporation statutes requirements for constructive service against corporations that are applicable solely to individuals. In the light of such holding no decree or judgment rendered pursuant to Chapter 11829, Acts 1927, can ever be secure, because no one can be sure, no matter what the face of the record shows that matters *in pais* may not be subsequently alleged to overthrow the record. I therefore dissent.

BUFORD, J. (dissenting).—I concur in what is said by Mr. Justice DAVIS, but I also am quite confident that the Legislature may legally provide that service of process may be had on any corporation becoming authorized to do business in Florida by delivery of copy of such process to a designated State or County official and in such event a corporation qualifying to do business in this State, either by being organized here or by complying with the statutes applying to foreign corporations, would thereby irrevocably accept the terms of the process statute and would be bound by service so made.

The statute here involved provides for just such service of process and provides a definite method by which the corporation may by certain affirmative action place itself in position to have service made on one of its own selection.

Smetal Corporation failed to avail itself of the convenience provided and if the statute is valid (which it is defintely held to be) the service was valid.