P. W. KLINGER v. MILTON HOLDING COMPANY, a Corp. and LULA A. LUMMUS, a widow.

186 So. 526.
Opinion Filed March 10, 1938.
On Rehearing January 24, 1939.
Further Rehearing Denied February 28, 1939.

*John J. Lindsey* and *Kenneth Ballinger,* for Appellant;

*Stapp, Gourley, Ward & Ward* and *Edward E. Fleming,* for Appellees.

CHAPMAN, J.—This is an appeal from an order dated September 16, 1936, entered by the Circuit Court of Dade County, Florida, dismissing with prejudice, a bill in the nature of a bill of review to impeach, annul and set aside a final decree entered by the Circuit Court of Dade County, Florida, in a chancery suit therein previously pending No. 32344, with deed or conveyances based thereon, and for an accounting. All parties claiming under each of said instruments were made parties to the bill of review. This Court approved a similar suit in the case of Yager v. North & South A. R. Phos. Co., 82 Fla. 38, text 44-5, 89 So. 340, when it was said:

" * * * This suit was brought to annul the proceedings and decrees in another suit decided in the same court. The bill was therefore not an original bill. The subject of the litigation had its origin and source in the controversy involving the partition of the lands between the two corporations.

The facts alleged in the bill in the instant case appear not to have arisen subsequently to the former litigation, but were then available to a diligent person interested in the controversy. It is a bill to reverse a decree rendered in the partition suit. It is therefore a bill of review, but it does not rest upon error apparent, nor upon new matter arising after the rendition of the decree; but attacks the decree upon the ground of fraud alleged to have been perpetrated by counsel in the cause and manipulations of officers of one of the corporations interested in the lands; but no leave was granted by the court nor asked for by complainant to file the bill so far as the record discloses. The allowance of a bill of review is not a matter of right in the parties, but rests in the sound discretion of the Court to be exercised cautiously and sparingly, and under circumstances that demonstrate it to be indispensable to the merits and justice of the cause. See 10 R. C. L. 575."

See Taylor v. Day, 102 Fla. 1006, 136 So. 701; State v. White and F. C. & P. Ry., 40 Fla. 297, text 310, 24 So. 160; Mattair v. Card, 19 Fla. 455.

Service by publication was had on the defendant P. W. Klinger, appellant here, and is the basis for the final decree dated December 7, 1931, sought to be impeached, set aside, and decreed null and void in this bill of review. The order of publication as made by the Clerk of the Circuit Court of Dade County, Florida, was predicated on the following affidavit:

"Before me, a Notary Public of the State of Florida at Large, personally appeared L. R. KING, who after being first duly sworn, upon his oath deposes and says:

"That he is Agent and Attorney for the above named Complainant and as such is duly authorized to make this Affidavit, and makes the same for and on behalf of said Complainant; that it is the belief of the Affiant and the com-

plainant that the Defendants, Arthur E. Williams, and if married, _____ Williams, his wife, Julian E. Gray, and if married, _____ Gray, his wife, P. W. Klinger, and if married, _____ Klinger, his wife, and Cora H. Welch, unmarried, or if married, her husband, are non-residents of the State of Florida, and are residents of a State or Country other than the State of Florida, and that the place of residence of said defendants is unknown. Affiant further says that he believes that said Defendants are over the age of twenty-one years, and that there is no person in the State of Florida the service of a Subpoena upon whom would bind said defendants.

"Affiant further says that the defendant, Smitz & Emmons, Inc., is a Florida corporation, and that there has been filed in this cause a Certificate of the Secretary of State of Florida, certifying that said corporation is organized and existing under the laws of the State of Florida, and that the said corporation has not complied with provisions of Section 57, Chapter 10095, Laws of Florida, 1925, nor with Sections 4253 or 4359 of the Compiled General Laws of the State of Florida, 1927, relative to designating an office or place of business or domicile for the service of process and naming an agent to accept service; that after diligent search, the Sheriff of Dade County, Florida, has failed to find any officer or agent of the said corporation in Dade County, Florida, upon whom process could be served, and has so returned the Writ herein; that there is no person in the State of Florida the service of a Subpoena upon whom would bind the said Defendant corporation."

The above affidavit states that affiant believes the P. W. Klinger, a defendant therein, at the time of making the affidavit was a non resident of the State of Florida and at the time was a resident of a State or Country other than the State of Florida and that his place of residence was un-

known. ˙ The transcript of the record shows that L. R. King, at the hearing before the Master, in part testified, as follows:

"Q. In that affidavit, Mr. King, you state that the plaintiff in this present suit, P. W. Klinger, and his wife described therein as ............... Klinger, are non-residents of the State of Florida according to your belief, and their residence is unknown. I will ask you to state what investigation or inquiry you made, if any, prior to the making of that affidavit?

"A. I first had an abstract or search of the record made by J. W. Blow embracing some ten or twelve lots which are involved in the suit to foreclose certain tax certificates. As I recall at this time, from that abstract I made an examination of the various conveyances as they appeared in the abstract, in deed and mortgage books in the Clerk's office, Dade County, Florida, and in addition to that, as I recall, I also examined to determine whether or not, or rather, to whom those conveyances that appeared in the abstract or search of title were delivered from the Clerk's office. I also examined the then current City of Miami directory to determine the address or residence of Mr. Klinger and I also examined the current telephone directory in the City of Miami to determine the residence or address of Mr. Klinger. As I recall, the bill was filed, that is the bill establishing the case in which this affiadvit was filed, in the early part of the year 1931. * * *

"Q. Did you know that there was in the office of the Tax Collector a record or writing which purported to show that place of residence of P. W. Klinger as 235 Grafton Avenue, Dayton, Ohio?

"A. I did not.

"Q. Did the Clerk of the Circuit Court of the Tax Collector advise you that there were duplicate tax receipts is-

sued to P. W. Klinger, which receipts showed the place of residence to be 235 Grafton Avenue, Dayton, Ohio?

"A.   No. * * *

"Q.   As I understand you, you didn't rely entirely upon the information contained in the abstract but investigated instruments recorded in what is known as the public records of the Circuit Court Clerk's office?

"A.   As I recall I was able to find a certain number of defendants in the city directory and in the telephone book who were local.   Those I could not find through that source I made a list of, just how many I do not recall, and made an examination of those records in the Clerk's office with reference to those defendants whom I was unable to determine were residents from examination of the directory and telephone book.

"Q.   Do you have at this time any independent recollection of having examined page 232 of Deed Book 681 of the Circuit Court Clerk's office?

"A.   At the time the affidavit was filed I do not, Mr. Lindsey.

"Q.   To refresh your recollection, I exhibit to you Plaintiff's Evidentiary Exhibit No. 2, a certified copy of the deed recorded at page 232 of Deed Book 681 of the Public Records of Dade County, Florida, and will ask you if that causes you to recall whether or not you examined that deed.

"A.   I don't recall of having seen this deed among the records at the time the affidavit was made.

"Q.   If you failed to examine that deed it was an oversight in your intention of examining all the records?

"A.   If it was of record at that time, yes.

"Q.   Do you recall just where you obtained the information from which you based your allegation in the bill of complaint in Chancery Cause No. 32344-C that P. W. Klinger and if married, _____ Klinger, his wife, had

or claimed some interest in Lot 3, Block 13, Beach View Addition?

"A. Apparently that was taken, and I am quite sure it was taken, from the search of title or abstract which I had prepared on that particular lot or lots with the other lots involved in the suit.

"Q. Then, to the best of your recollection you did not as to that particular lot 3 of Block 13, Beach View Addition, being the property involved in this case, go further than the information contained in the abstract and city and telephone directories.

"A. Rather, on the contrary, as I recall, I made an examination of the public records to determine the residence of Mr. Klinger along with other defendants. Whether or not I examined that particular deed, or overlooked to examine it in making a schedule of defendants and their residences, I do not know. Whether I actually examined that deed or not I do not know. I couldn't say.

"Q. But you are quite sure that it appeared in the abstract and that was what you based this allegation in the bill of complaint upon, the information either contained in the abstract or appearing upon the public records?

"A. I am inclined to think that it appeared in the abstract, though it has been some three years since I have seen the abstract to examine it.

"Q. I direct your attention, Mr. King, to the certificate of the Clerk appended to Plaintiff's Evidentiary Exhibit No. 2 that the deed of which that exhibit is a certified copy was filed in the Clerk's office on the 27th day of July, 1925. Then it would be true, would it not, that this deed was of record at the time of filing your bill in chancery No. 32344-C?

"A. Apparently that is true. * * *

"Q. Then it would be true, Mr. King, that if you had

followed out your intended efforts in the locating of the places of residence of the defendants to inspect all original recorded instruments shown by the abstract, you would have discovered the same?

"A. If that deed was recorded at that time, and it appears to have been, it discloses that the grantee in that deed was from Dayton, Ohio, without any particular designated address.

"Q. Then, as I understand your testimony, Mr. King, if this deed was of record, you either didn't read it or you overlooked this address or this place of residence appearing on the face of the deed.

"A. That would appear to be true. I previously stated that I had not seen the deed, either or record or otherwise, so that if there is any conclusion to be drawn, it would be that I overlooked or did not discover the deed at all."

In the case of Balian v. The Wekiwa Ranch, 97 Fla. 180, text 193-4, 122 So. 559, it was said:

"Affiant's mere arbitrary statement, however, as to the defendant's residence or whereabouts, or as to complainant's belief concerning the same, does not conclude the matter as against timely and appropriate attack. The statement must be truthful and free from *mala fides*. The basis for the statement must not be merely nebulous or fanciful, but one which is reasonably tangible or perceptible in fact. Resort to constructive service is predicated upon necessity, and if personal service could be effected by the exercise of reasonable diligence, constructive service is not justified. The sworn statement required of the complainant by the statute presupposes a previous reasonable search to ascertain the whereabouts or residence of the defendant, and diligence appropriate to the circumstances of the particular case, without which the requirements of due process would not be

satisfied, and the door would be open to the perpetration of fraud."

It was also said in this case, Text page 192:

"The qualifying phrase, 'specifying as particularly as may be known to affiant such residence' was first added to the statute in 1892. That phrase, however, obviously qualifies only the condition which precedes it, which is that under which affiant states his belief that the defendant is a resident of a state or county other than this State. It is apparent in such a case that complainant has at least some knowledge as to the place of defendant's residence, and he is required to state it as particularly as it may be known to him. See Ortel v. Ortel, *supra* (91 Fla. 50, 170 So. R. 442). In that situation, defendant's residence is not altogether 'unknown' to complainant, within the purport of the statute * * * "
See McDaniel v. McElvey, 91 Fla. 770, 108 So. 820, 51 A. L. R. 731.

The affidavit for an order of service by publication is dated April 2, 1931. It was filed in the office of the Clerk of the Circuit Court of Dade County, Florida, on April 3, 1931. Exhibits offered in evidence from the Tax Collector's office of Dade County, Florida, dated November 30, 1928; on January 30, 1929; on December 18, 1930; on November 30, 1931, and on November 30, 1932, show that P. W. Klinger lived at 235 Grafton Avenue, Dayton, Ohio. The deed to Klinger to Lot 3 (Three), Block 13 (Thirteen), Beach View Addition, as recorded in the office of the Clerk of the Circuit Court of Dade County in Deed Book 681, at page 232, and filed in the office for recordation on July 27, 1925, had and carried the address of P. W. Klinger at Dayton, Ohio. The address of P. W. Klinger at 235 Grafton Avenue, Dayton, Ohio, is further shown to have been in the office of Tax Collector of the City of Miami Beach, Florida, during the years 1925, 1926, 1927, 1928, 1929, 1930 and

1931. On January 27, 1933, after foreclosure and a Master's deed had been obtained, the correct address of appellant was obtained and he received a letter, viz.:

"Mr. P. W. Klinger, 235 Grafton Avenue, Dayton, Ohio.

"Dear Sir:

"In Re: Lot 3, Block 13, Beach View Addition, Plat Book 16, Page 10.

"The records of the tax collector's office show that you paid the State and County taxes for the years 1931 and 1932, and the City of Miami Beach taxes for the year 1931 on the above described property.

"We wish to call to your attention the fact that our client is now the owner and holder of the fee simple title to the above described property, having foreclosed a tax certificate in the Circuit Court in and for Dade County, Florida, being Chancery case No. 32344, at an expense of approximately $1,000.

"It is our desire to reimburse you for the amount you paid for taxes, provided you are willing to execute to us a quit-claim-deed. Otherwise we will be glad to entertain any proposition you might care to make in regard to the repurchase of the said property."

It is clearly shown by the records in this case that the diligence required by law to ascertain, learn, and with accuracy set forth the place of residence of the defendant P. W. Klinger has not been made to appear. The correct address of P. W. Klinger was given by the record in the deed as Dayton, Ohio. The records in the Tax Collector's office of Dade County, as well as the Tax Collector's office of the City of Miami Beach, gave his correct city address in Dayton, Ohio, and had been in each of these offices for several years prior to April 3, 1931. The defendant, P. W. Klinger, testified that he had no knowledge of the institution of the

Chancery suit to foreclose the tax certificates issued against his property and that no notice of its pendency was ever received, and this conclusion is fully sustained by the record.

The Master made findings of fact and recommendations to the Chancellor, in part, as follows:

"It is your Master's opinion that the Master's sale held pursuant to such defective notice was of no legal effect insofar as the property involved herein is concerned; that the confirmation of the Master's report was error because the requirements of the final decree had not been complied with; and that the Master's Deed executed and delivered pursuant thereto to the plaintiff Milton Holding Company in said cause No. 32344 was ineffectual insofar as the property involved in this instant cause is concerned.

*"Recommendations*

"The Master, therefore, finds that the equities are with the plaintiff, and recommends that in order that substantial justice be done the plaintiff herein that the Master's deed issued pursuant to said final decree in cause No. 32344 to the defendant herein, Milton Holding Company, be, insofar as the same purports to convey the property involved herein, set aside, annulled and held for naught, and that the deed from said Milton Holding Company to the defendant Lula J. Lummus, a widow, be cancelled, annulled and set aside and held for naught insofar as same purports to convey said property involved herein. * * * "

The question presented here is whether or not there has been such a substantial compliance with our constructive service statutes as to give the lower court jurisdiction of the person of P. W. Klinger. We hold that the affidavit upon which the order of publication was made is defective, fails to comply with the statute and is insufficient in law to confer jurisdiction. It has been held by previous decisions that

where the court has no jurisdiction over the person of a defendant by reason of defective constructive service by publication, any action of the court against the defendant based upon such service is without authority of law. In the case of Stern, *et ux.*, v. Raymond, *et al.*, 95 Fla. 410, text 411-12, 116 So. 6, this Court had the same question before it and said:

" * * * we must hold that if the allegations in regard to the publication of the notice by which constructive service was attempted to have been had upon the defendants in this suit to foreclose the paving lien as evidenced by the paving certificate, are true, then the decree of foreclosure of such lien was void because the court had not acquired jurisdiction of the parties. State, *ex rel.* Yaeger, v. Rose, 93 Fla. 1018, 114 So. 373. A suit might be maintained at any time to set aside such void decree. Shrader v. Shrader, 36 Fla. 502, 18 So. 672; Myakka Co. v. Edwards, 68 Fla. 382, 67 So. 217; Cobb v. Hawsey, 56 Fla. 159, 47 So. 484; Wilson v. Drumwright, 87 Fla. 202, 99 So. 553 * * * "

Section 4, Declaration of Rights of the Constitution of Florida, makes it the duty of *all courts in this state* to see that right and justice shall be administered, without sale, denial or delay. It appears from the record in this case that appellant has been deprived of his property without his day in court. It cannot be said that right and justice has prevailed in the case at bar. The final decree dated December 7, 1931, the Master's deed predicated thereon and subsequent mesne conveyances are void *ab initio*.

The decree appealed from is hereby reversed with directions to the lower court to make and enter such further orders or decrees as shall be conformable to equity not inconsistent with this opinion.

It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

## ON REHEARING.

BROWN, J.—There is one sentence in our original opinion which, upon further consideration on rehearing, we now deem to be erroneous. It reads as follows:

"We hold that the affidavit upon which the order of publication was made is defective, fails to comply with the statute and is insufficient in law to confer jurisdiction."

The affidavit upon which the order of publication in this case was predicated is copied in the opinion, and it sets forth that, in the belief of affiant, the defendant Klinger, and certain other named defendants, "are non residents of the State of Florida, and are residents of a State or country other than the State of Florida, and that the place of residence of said defendants is unknown. Affiant further says that he believes that said defendants are over the age of twenty one years and that there is no person in the State of Florida, the service of a subpoena upon whom would bind said defendants."

We overlooked the fact that the allegations in the affidavit that "it is the belief of the affiant that the defendant is a resident of a state or country other than the State of Florida and that his residence is unknown," when coupled with the other statutory requirements, has been held by this Court in several cases to be a sufficient basis for the issuance of an order of publication under Section 3111 Rev. Gen. Stats. of 1920, being Section 4895, Complied General Laws of 1927. One of the most recent decisions of this Court on this subject was in the case of Bannon v. Kendall, 117 Fla. 475, 158 So. 99, wherein the affidavit for service by publication omitting the jurat, read as follows:

"State of Florida,
"County of Dade.

"Personally appeared before me, Evelyn Kendall, who is personally known to me and who being duly sworn deposes and says that she is the complainant in the above styled cause and that the defendant, Arthur Kendall, is a resident of a State or Country other than the State of Florida, and that his residence is unknown to Complainant, that said defendant is over the age of twenty-one years, and that there is no one within the State of Florida, service of a subpoena upon whom would bind said defendant, and complainant prays for service by publication.

"Evelyn Kendall, Complainant."

We held this affidavit to be sufficient in form and the constructive service obtained by publication thereon valid. See, to like effect, Kennedy, *et al.,* v. Seville Holding Company, 125 Fla. 415, 169 So. 860, and Catlett v. Chestnut, 107 Fla. 498, 146 So. 241.

The law on this subject was really settled by this Court in the case of Balian v. Wekiwa Ranch, 97 Fla. 180, 122 So. 559. The affidavit in that case upon which order of publication was issued stated that the places of residence of the defendants, naming them "are unknown, and that diligent inquiry has been prosecuted by deponent for and on behalf of the said complainant to ascertain the same; and there is no person in the State of Florida service of subpoena upon whom would bind the said defendants or either of them, and that it is the belief of the deponent that the defendants are over the age of twenty-one years." In that case, in the opinion by Mr. Justice STRUM, it was said:

"Complainant's affidavit as to the residence of the defendants, above set forth, is sufficient upon its face to authorize

the issuance of an appropriate order of publication under Section 3111, *supra.*

"Section 3111, *supra,* provides four alternative situations in which the complainant may have an order of publication to effect constructive service upon the classes of defendants therein referred to, namely, (1) 'Whenever the complainant, his agent or attorney, shall state in a sworn bill or affidavit, duly filed, the belief of affiant that the defendant is a resident of a State or County other than this State, specifying as particularly as may be known to affiant such residence, or (2) that his residence is unknown, *or* (3) that, if a resident, he has been absent for sixty days next preceding the application for the order of publication, and that there is no person in the State the service of a subpoena upon whom would bind such defendant, or (4) that he conceals himself so that the process cannot be served upon him.' (Italics supplied). Certain other statements are also required concerning the age of defendant, which are necessary with reference to all classes of defendants as above enumerated.

"Each of the four alternative situations above mentioned, including that in which the affiant states that defendant's residence 'is unknown,' are set off in commas, and are separated by the disjunctive 'or,' indicating the legislative intent that each situation should furnish a distinct, independent and substantive basis for the issuance of an appropriate order of publication, other requirements of the statute being complied with."

It is true that it was held in that case that the filing of an affidavit, although sufficient on its face to support an order of publication, does not conclude the matter against timely and appropriate attack; that the statement must be truthful and free from mala fides, and that the sworn statement required of the complainant by the statute presupposes a previous reasonable search to ascertain the whereabouts or

residence of the defendant, and the exercise of reasonable diligence appropriate to the circumstances of the particular case. But the opinion as a whole makes it plain that if the affidavit on its face complies with the statute, and an order of publication is duly issued thereon and publication made as ordered, which order is not set aside on timely and appropriate attack, this is sufficient to give the court jurisdiction of the parties. Jurisdiction of the subject matter is not here under attack. In connection with the general question of due diligence in the matter of procuring service by publication see also McDaniel v. McElvy, 91 Fla. 770, 108 So. 820; Minick v. Minick, 111 Fla. 469, 149 So. 483; Smetal Corporation v. West Lake Investment Co., 126 Fla. 595, 172 So. 58; 50 C. J. 496, *et seq.*

Of course there is a difference between a decree based upon an alleged service by publication where such service is void on its face, or the record shows that such service was never completed, and a decree which is based upon an affidavit and service that, on the face of the record, complies with every statutory requirement and that may or may not be voidable, depending upon facts that are extrinsic, such as lack of due diligence in attempting to ascertain the residence or address of the defendant before resorting to constructive service, or before filing an affidavit stating that defendant's residence is unknown, as a basis for such constructive service.

This case involves an affidavit, (and service by publication based thereon) which, according to our previous decisions, is good and sufficient on its face to give the court jurisdiction. The main question involved in this case, then, is whether the record in the present suit shows such lack of due diligence on the part of complainant, or the attorney for the complainant, in the foreclosure suit, before making the affidavit that defendant's residence was unknown, as would

render the decree and sale based thereon voidable upon proper attack by the defendant Klinger as against the complainant in the foreclosure suit; and if so, what effect does this have as against Mrs. Lummus, who purchased the property from such complainant?

In the case of Stern v. Raymond, 95 Fla. 410, 116 So. 6, the affidavit for publication was sufficient, but there was no actual publication of the order and no filing of the proof of publication. Thus the record itself showed that the requirements of the statute had not been carried out and therefore any one buying the property subsequent to the decree would be charged with knowledge of the lack of service as shown by the record.

But in this case, as we have seen, the affidavit for publication involved was sufficient in form to comply with the statute, and was duly published, and the proceedings in the tax foreclosure suit were, therefore, on the face of the record, regular, so far as jurisdictional matters are concerned.

We come now to the facts bearing on the question, again raised on this rehearing, as to whether or not the complainant in the foreclosure suit, the Milton Holding Company, exercised due diligence before filing said affidavit stating that defendant Klinger's residence was unknown. If said defendant's residence was known to complainant, or his attorney who made the affidavit on behalf of complainant, or could have become known by the exercise of reasonable diligence, then the filing of such affidavit was not legally justifiable, and rendered the service by publication and the decree rendered thereon voidable at least as between the parties to that suit. If the defendant's residence had been set forth in the affidavit, it would have become the statutory duty of the clerk to mail a copy of the order of publication to him. The defendant was deprived of this opportunity of receiving notice of the pendency of the foreclosure proceed-

ing, and we hold now, as we held in our original decision, that defendant Klinger was so deprived by reason of the failure of the complainant, Milton Holding Company, to exercise due diligence to ascertain the residence and address of said defendant and set it forth in the affidavit. As was pointed out in our former opinion, the record of the deed from Miami Beach Bay Shore Company to defendant Klinger, which deed was made in March of 1925 and recorded in the Clerk's office in July of the same year, clearly showed that Klinger's place of residence was Dayton, Montgomery County, Ohio. This deed was brought to the attention of the complainant by the abstract of title which it had in its possession and which was examined by complainant's attorney, as shown in our previous opinion. This information alone was readily sufficient, if properly followed up by an inspection of the record of the deed, to have acquainted complainant with said defendant's residence. Sapp v. Warner, 105 Fla. 245, 141 So. 124. The Complainant in the foreclosure suit knew that Klinger claimed some title or interest in the land, and so alleged in its bill to foreclose, and made him and his wife parties defendant to the bill. We held in our original opinion that the failure to inspect the record of the deed, of which complainant had notice as aforesaid, was, under the circumstances, a failure to exercise reasonable diligence, and we adhere to that holding. See also opinion of Mr. Justice BUFORD in Davis and Knight v. Brewer, decided at the present term, but not yet reported, to similar effect. The case of Eldridge v. Fitz & Co., 126 Fla. 548, 171 So. 509, is strongly persuasive of the correctness of our position, though not strictly in point, because in that case, the plaintiff's bill showed that plaintiff had knowledge of a recorded instrument which showed the address of the non-residence defendant.

When a complainant resorts to constructive service, he

should make an honest and conscientious effort, reasonably appropriate to the circumstances, to acquire the information necessary to fully comply with the controlling statutes, to the end that the defendant, if it be reasonably possible, may be accorded notice of the suit.

The conclusion above reached makes it unnecessary to determine whether due diligence required any search of the duplicate tax receipts or the stub books of the tax collector. These are not public records in the same sense as are deed and mortgage records. They are not required to be indexed. But it would seem that where a plaintiff is attempting to foreclose tax certificates, he would probably familiarize himself with what the tax records show as regards the property. Nor is it necessary to determine the evidentiary value of the letter received by the defendant in January, 1933, which was the first information he had received of the tax foreclosure proceeding, and which showed that the writer knew Klinger's street address in Dayton,, Ohio. This letter was not written by the foreclosing complainant's attorneys, but was written by the attorneys for Mrs. Lummus, who purchased from the Milton Holding Company about two years after the bill for foreclosure was filed for that company by other attorneys, something over six months after the foreclosure decree was rendered. These matters were mentioned in our original opinion, but were not expressly made the basis for the conclusion reached. We might also call attention to the fact that one of the witnesses placed on the stand in behalf of the defendants in the court below, appellees here, said witness being a prominent and experienced attorney of Miami, on cross examination testified that the grantor in the deed to appellant Klinger, the Miami Beach Bay Shore Company, was one of Carl G. Fisher's corporations, and was a well known realty firm, one of the best known at Miami Beach, and that inasmuch as the abstract disclosed the name of the

grantor, ordinary and usual diligence would have required telephoning that company in an effort to ascertain the residence or address of their grantee, Klinger. The record does not show that any such inquiry was made. The question of due diligence is largely a question of fact. As above stated we have not rested our decision upon each of these matters separately, but they do, considered together, shed some light upon the general attitude of, and the degree of diligence exercised by, the Milton Holding Company at the time this service by publication was obtained. But we think their failure to inspect the public record of the deed from the Miami Bay Shore Company to Appellant Klinger was, by itself, under the circumstances, sufficient to show a lack of due diligence.

The importance of requiring the exercise of due diligence in connection with procuring constructive service by publication is illustrated by the facts of this case. The appellant here, P. W. Klinger, is shown by the record to have been a business man of the City of Dayton, Ohio, who had been operating a manufacturing company in that city for more than twelve years at the time of this suit. He paid the Miami Beach Bay Shore Company $5000.00 in cash for this lot in May of 1925. His testimony shows that in Dayton, Ohio, all taxes are paid in one tax collector's office. Immediately upon finding that there were two tax collectors' offices in Miami, he inquired both of the tax collector and of the clerk of the circuit court what taxes were due on this land, payable through their offices, and in response to this inquiry received a statement only of 1928 taxes. These he promptly paid, and continued to pay the State and County taxes for the years 1929 to 1932, promptly each year. He did not make any return on this property for the year 1926 or 1927 and the tax assessor assessed the same as unknown. In March of 1931 the Milton Holding Company procured

the assignment of tax certificates for the years of 1926 and 1927 and instituted an action to foreclose these certificates against the lands covered therein, the amount of such certificates aggregating less than $100.00. In this suit, as we have seen, the affidavit for publication alleged that the residence of the defendant was unknown. The suit proceeded to final decree, and at Master's sale the plaintiff in the suit, Milton Holding Company, became the purchaser on February 1, 1932, and the sale was confirmed by an order of the Court dated February 11, 1932, on which date the Master executed his deed to said purchaser and the same was filed for record on that date. Thus the plaintiff in the foreclosure suit secured for about $100.00 a lot for which the defendant Klinger had paid $5000.00. Thereafter, on August 16, 1932, the Milton Holding Company executed a deed to Mrs. Lula J. Lummus, conveying said lot to her. At the time this deed to Mrs. Lummus was executed, more than six months had elapsed from the date of the final decree and the decree confirming the foreclosure sale and the time for taking an appeal therefrom had expired. Several months later, on January 27, 1933, the attorneys for Mr. Lummus wrote the letter to Mr. Klinger quoted in our original opinion, which was his first information as to what had happened. Upon making this discovery, Klinger promptly offered to reimburse the appellee for its outlay, including interest, penalty and expense, as of the time of filing its bill. This offer being refused, he filed his bill attacking the validity of the final decree and said Master's deed, and also the deed to Mrs. Lummus, who suffered a decree *pro confesso* to be entered against her. The defendant Milton Holding Company demurred to the bill, which demurrer was overruled, whereupon it filed its answer. The bill did not allege that Mrs. Lummus knew P. W. Klinger, or his residence or address at the time she purchased the property. It simply al-

leged that she became the purchaser of the property, and that deed was executed to her by the Milton Holding Company as above stated. Whether she was an innocent purchaser for a valuable consideration, or not, is not alleged in the bill. Nor did the bill accuse any one of intentional fraud. The bill filed by Mr. Klinger to set aside the foreclosure decree and the subsequent conveyances is grounded mainly upon the allegations of an utter lack of due diligence on the part of the plaintiff in the foreclosure suit in filing to ascertain and show in his affidavit for publication the place of residence of the defendant in that suit to be Dayton, Montgomery County, Ohio, which it was contended was the equivalent of actual fraud and rendered the decree and the master's deed executed thereunder null and void.

As above stated, the evidence in the case showed the lack of due diligence as charged, but the affidavit and service by publication being valid and sufficient on the face of the record, the final decree and the action taken thereunder were not absolutely void but merely voidable.

It follows from what has been said above, and from the decisions cited, that the foreclosure decree thus attacked was and is clearly voidable at the suit of the appellant Klinger as against the plaintiff in the foreclosure suit, the Milton Holding Company, and the chancellor erred in dismissing appellant's bill in so far as the Milton Holding Company was concerned, but the question arises, and has been earnestly argued on this rehearing, whether there was any error in dismissing the bill as respects the co-defendant, Mrs. Lula J. Lummus. It is urgently insisted by counsel for Mrs. Lummus, that, at least as to her, the bill was without equity and that the chancellor was justified in dismissing the bill.

In the case of Moor v. Neil, 39 Ill. 256, 89 Am. Dec. 303, it was held that where a bill in chancery is filed to set aside an administrator's sale, the proceeding should not, perhaps,

be regarded as collateral to the former suit so far as it re-
lates to the parties to that suit, but as to purchasers whose
title derived from the sale is sought to be divested it is purely
collateral.

In 35 C. J. at page 94 it is said that "A *bona fide* grantee
from a purchaser at a judicial sale is not affected by ir-
regularities, mistakes or fraud, of which he did not have
notice, although as to the grantor, sale might have been set
aside."

And further on the same page it is said: "The purchaser's
grantee is chargeable with notice of all jurisdictional de-
fects, but his title is not defeated by a subsequnt reversal or
vacation of the judgment for error or irregularity, although
it may be affected with an equity in favor of other persons
by reason of his having purchased with knowledge of facts
rendering his title voidable." See also in this connection 34
C. J. 563, 567, and in 11 C. J. 960, "collateral proceeding"
is defined as follows: "In law, another proceeding, not for
the direct purpose of impeaching the proceeding to which it
is said to be collateral." In Johnson v. McKinnon, 54 Fla.
221, 45 So. 23, this court said:

"A decree rendered by a court having jurisdiction of
the parties and the subject matter, unless reversed or an-
nulled in some proper proceeding, is not open to contra-
diction or impeachment, in respect to its validity, verity or
binding effect, by parties or privies in any collateral action
or proceeding. 23 Cyc. 1055; Rushing v. Thompson's
Executors, 20 Fla. 583, text 596.

"Where the decree is such a one as the court had juris-
diction to render, the presumptions are all in favor of its
regularity and validity until vacated by some proper pro-
ceeding instituted directly for the purpose of correcting
errors therein and cannot be attacked collaterally. Lee v.
Patten, 34 Fla. 149, 15 South. Rep. 775; Finley v. Cham-

berlain, 46 Fla. 581, 35 South. Rep. 1. A decree that is absolutely null and void, however, may be collaterally assailed. But the decree that is voidable only, because irregular or erroneous, must be moved against in time by motion to vacate, or by resort to an appellate tribunal, otherwise it becomes an absolute verity. Einstein v. Davidson, 35 Fla. 342, text 355, 17 South. Rep. 563; Lord v. Dowling, 52 Fla. 313, 42 South. Rep. 585."

In the case of Kroier v. Kroier, 95 Fla. 865, 116 So. 753, this Court held that delay in moving to have a judgment vacated, so long as the party had no notice of the judgment and no rights of innocent third parties have intervened, will not usually bar his right to the relief prayed for.

It was also held in the same case that a judgment which is void, as distinguished from voidable only, may be set aside on motion after the expiration of the term, and may even be collaterally assailed. See also Goodrich v. Thompson, 96 Fla. 327, 118 So. 60, and Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694.

In Sawyer v. Gustason, 96 Fla. 6, 118 So. 57, this Court held that: "Where, in a suit to quiet title against a non-resident, as to whom constructive service by publication was had, the bill alleged that the lands were wild, unoccupied and unimproved, but it was subsequently made to appear to the Court by motion of such defendant to vacate the decree rendered in favor of the complainant, that such allegation was untrue and that the lands were in fact in actual possession of such non-resident defendant through an agent, the action of the Court in granting the motion to vacate, will be sustained; the defendant having acted with due diligence upon learning of such decree.

"Such decree, being valid on its face and there being nothing in the record showing it to be otherwise, was not void, but merely voidable, as the facts showing the Court's

lack of jurisdiction could only be established by matter *dehors* the record."

In the case of Smetal Corporation v. West Lake Investment Co. 126 Fla. 595, 172 So. 58, this Court said:

"It is also contended that it was not alleged in the bill that Hulda M. Elsasser and her husband had any knowledge of any alleged fraud or defects in the service of process, and must therefore be presumed to have been innocent purchasers for value from the West Lake Investment Co., and entitled to rely upon the record of said cause as it existed at the time of their purchase, inasmuch as the service was valid upon its face and is now attacked solely upon matters *de hors* the record.

"Taking up this last contention first, there is no allegation in the bill that Mrs. Elsasser or her husband paid any valuable consideration for the deed made to them by the West Lake Investment Co. The bill merely alleges that on March 8th, 1934, which was three days after the Master's sale and two days after the Master's deed to the West Lake Company was executed the West Lake Company ."executed and delivered a deed to said premises to the defendant, Hulda M Elsasser, "which deed was recorded that same day. The bill also shows that at that time the premises were in the actual possession of the Smetal Corporation through its tenant, who had rented the property from the Smetal Company and moved into it several days prior to the making of said deed, and that the Smetal Company's first knowledge of the attempt to foreclose on its property was when its tenant in possession notified said Company that Mrs. Elsasser had demanded possession of the property and that he, the tenant, had later been ordered to show cause before the Court why a writ of assistance should not issue to divest him of his possession.

"The petition for rehearing impliedly admits that Mrs.

Elsasser was chargeable with notice of any lack of jurisdiction of the parties or subject matter apparent on the face of the record of the cause. (See 35 C. J. 82) An inspection of the record would have disclosed to her that the certificate of the Secretary of State had not been filed, as required by Sec. 4261, C. G. L. when the order of publication was made; which, in the opinion of a majority of the Court, was sufficient to show, on the face of the record, that the order of publication was illegally issued. The rule of *caveat cmptor* applies in its utmost vigor and strictness to those claiming under judicial sales. See opinion by Mr. Justice BUFORD in Lindsley v. Phare, 115 Fla. 454, 155 So. 712, and authorities cited."

In this case, however, the record in the foreclosure proceeding did not disclose any jurisdictional defects on the face thereof; nor was there any tenant in possession of this property so as to put Mrs. Lummus upon inquiry, as in the cited case. The property here involved is a vacant lot.

But is the appellee, Mrs. Lummus, in a position to assert any rights as a bona fide purchaser for value and without notice, on this appeal from a decree in her favor in the court below, which decree dismissed the bill both as to her and to the Milton Holding Company? Having suffered a decree *pro confesso* to be entered against her, and there being nothing in the record to show that she took any steps to defend herself in the court below, except by merely filing exceptions to the Master's report, and there being nothing in the record to show positively that she paid anything of value for the deed from the Milton Holding Company, can she now insist that the decree of the court below dismissing appellant's bill should be sustained, at least insofar as she is concerned?

Mrs. Lummus was personally served with process in this case and did not see fit to file any appearance or answer.

She allowed a decree *pro confesso* to be entered against her. When the Master rendered a report favorable to plaintiff Klinger she did file exceptions to the Master's report, but the record does not show that she obtained leave of the court to do so except by inference. The Milton Holding Company also filed exceptions to the Master's report, and in its decree the court below sustained the exceptions, and dismissed the bill.

In this connection we might note some of our former decisions.

"After decree *pro confesso* in an equity cause the proceedings are *ex parte* and the defendant in default is not entitled as of right to present a defense, but is not deprived of the right to question the legality and material correctness of the proceedings. Lybass v. Ft. Myers, 56 Fla. 817, 47 So. 346."

"The proceedings in a chancery cause after a decree *pro confesso* regularly entered are *ex parte,* and a party in default will not be entitled to notice; but while such proceedings are *ex parte,* the final decree must be such as the complainant is entitled to on his bill, and a decree *pro confesso* on a bill to foreclose a mortgage will not dispense with the production on final hearing of the mortgage securities, where they are the only evidence of complainant's right to recover. Lenfesty v. Coe, 34 Fla. 363, 16 So. 277."

"The proceedings in a chancery cause after a decree *pro confesso* regularly entered are *ex parte,* and the party in default will not be entitled to notice of them; but while such proceedings are *ex parte,* the final decree in the cause must be proper and consequent upon the case made in the bill. Garvin v. Watkins, 29 Fla. 151, 10 So. 818. See Sec. 87."

"A decree *pro confesso* entitles the complainant to the relief for which a proper predicate has been laid in the bill

of complaint. Ocala v. Anderson, 58 Fla. 415, 50 So. 572; King v. Bell, 54 Fla. 568, 45 So. 488."

In view of these former holdings of the court, the bill filed by the appellant Klinger clearly entitled him to the relief prayed for as against the defendant Milton Holding Company, if it alone were concerned, but it does not clearly allege such facts as would clearly show that plaintiff Klinger was entitled to a decree canceling the deed made by Milton Holding Company to Mrs. Lummus. The bill does not allege that Mrs. Lummus acquired the title without the payment of any valuable consideration, or that there was any collusion between her and the Milton Holding Company, or that she had any notice at the time she took the deed of any lack of diligence on the part of Milton Holding Company with respect to the constructive service purported to have been obtained in the foreclosure suit against Klinger.

While this record does show that Mrs. Lummus or her attorneys knew the residence address of Klinger in January of 1933, this does not necessarily mean that Mrs. Lummus had that information at the time she purchased the lot in August, 1932.

In view of the circumstances of this case, as disclosed by the record, our conclusion is that our former judgment reversing the decree of the lower court *in toto* should be adhered to on this rehearing, but that the cause should be remanded with leave to the appellant Klinger, if he be so advised, to amend his bill so as to show if he can that Mrs. Lummus was not a purchaser for value and without notice, and with the authority to the lower court to permit Mrs. Lummus to file an answer to the amendment so made, and that such further proceedings may be had and orders and decrees shall be made in this cause as shall be conformable to equity and not inconsistent with the foregoing opinion,

or with our original opinion in this case except insofar as the same is hereby modified.

Reversed and remanded with directions on rehearing.

WHITFIELD, P. J., and CHAPMAN, J. J., concur.

TERRELL, C. J., and BUFORD, J., concur in the opinion and judgment.

THOMAS, J., not participating, as this case was submitted before he became a member of the Court.