923 So.2d 1209 (2006)
Mary GODSELL, Appellant,
v.
UNITED GUARANTY RESIDENTIAL INSURANCE, etc., Appellee.
No. 5D05-703.
District Court of Appeal of Florida, Fifth District.
March 17, 2006.
*1210 Mary L. Taylor, of The Law Offices of David R. Carter, P.A., New Port Richey, for Appellant.
Michelle G. Castillo, of Kass, Schuler, Solomon, Spector & Foyle, Tampa, for Appellee, United Guaranty Residential Insurance Company of North Carolina.
Darryl W. Johnston, of Johnston & Sasser, P.A., Brooksville, for Appellee, Ellen Jane Mancuso.
PER CURIAM.
This is an appeal of an order denying a motion to vacate a final judgment of foreclosure.
On or about February 14, 2004, United Guaranty Residential Insurance Company of North Carolina ["United"], acting as successor in interest of NationsBank/Bank of America, filed suit against Mary Godsell ["Godsell"] to foreclose a second mortgage[1] on real property she owned which was located at 6009 Applegate Drive, in Spring Hill, Florida. The mortgage had been executed by Godsell and her daughter, Sioban M. Challis ["Challis"]. The mortgage secured payments under a note executed by Challis on a credit line in the amount of $29,000 used by Challis' husband in his business. He defaulted on the payments after he and Challis were divorced, although he had been ordered to pay the note in the final decree. The complaint sought $28,996.43 in principal under the note and mortgage, plus interest, costs and attorney's fees.
Godsell is a permanent resident of Canada, but her address shown on the mortgage was the Applegate Drive property, which she uses seasonally. After filing suit, United made two attempts to serve Godsell at the 6009 Applegate Drive address. The first attempt was made on February 21, 2004. The affidavit of service indicates:
UNOCCUPIED AT THIS TIME; CURRENT RESIDENT WAS ARRESTED BY THE HERNANDO COUNTY SHERIFF'S OFFICE IN THE MONTH OF JAN. 2004; ELECTRIC IS STILL ON; OWNER LIVES IN CANADA, PER NEIGHBORS.
Because service was unsuccessful, United employed a "skip trace" service to locate Godsell. The only known sources contacted by the skip trace service in an attempt to determine Godsell's address were: (1) the Florida Department of Motor Vehicles, (2) the Trans Union Social Security data bases, and (3) the U.S. Postal Service, for a forwarding address. These sources apparently came up with a second possible address for Godsell at 8151 Allen Drive, Weeki Wachi, Florida. A second attempt to serve Godsell at both addresses was unsuccessful. The affidavit of service for this attempt stated:

*1211 UNOCCUPIED AT THIS TIME; CURRENT RESIDENT WAS ARRESTED BY THE HERNANDO COUNTY SHERIFF'S OFFICE IN THE MONTH OF JAN. 2004; ELECTRIC IS STILL ON; OWNER LIVES IN CANADA, PER NEIGHBORS; ALSO ATTEMPTED 8151 ALLEN DRIVE, SPRING HILL, FL., 34613; DOES NOT LIVE AT THIS ADDRESS; JACQUIEAND [SIC] ANASTASSI MIKHAILIDES LIVE AT THIS ADDRESS.
Because service had been unsuccessful, United gave Godsell notice of the action by publication. United's affidavit of "diligent search" for service by publication stated in relevant part:
2. Diligent search and inquiry have been made to discover the identity and residence of Defendant(s), MARY GODSELL. Plaintiff hired an investigator to perform a skip trace to locate the defendants, but said investigator was unable to determine the residence address for the Defendant(s). Plaintiff has attempted service on the Defendant(s) at the following addresses:
(a) 6009 Applegate Drive, Spring Hill, Florida 34606;
(b) 8151 Allen Drive, Weeki Wachi, FL 34613.
3. Directory assistance for these cities does not have a current listing for these Defendants. Plaintiff's investigator searched various data bases, including the Florida Department of Motor Vehicles and the Trans Union Social Security data bases, to obtain the current residence address for the Defendant(s), without success. Written inquiries have been made with the U.S. Postal Service for forwarding addresses, without response. The investigator has been unable to discover further information regarding the current residence of the Defendant(s) after diligent search and inquiry.
Apparently relying on this affidavit, the clerk of the court sent notice of the action to Godsell at the Allen Drive address and not the Applegate Drive address. Godsell never learned of the suit, and on June 18, 2004, a final default judgment of foreclosure was entered against her in the amount of $34,231.43. The judgment was sent to the Allen Drive address. The property was later sold to an unrelated third party on September 9, 2004, for the sum of $55,000, and the clerk issued a certificate of title.
Godsell learned of the foreclosure from a neighbor who had been caring for the property and, shortly thereafter, she filed a motion to vacate the final judgment, asserting that the sale was void because of United's failure to make a "diligent search" to determine her Canadian address. The motion alleged:
5. The affidavit of the process server reflects [on its face] that additional steps should have been taken which are not reflected in the Affidavit of Diligent Search to determine the address of the owner, Mary Godsell, in Canada. For example, it does not indicate that any of the neighbors who stated that the Owner was in Canada asked for the Defendant's address or location (city, town or province) in Canada. Accordingly, the court file reflects that such affidavit is insufficient to establish diligent search and inquiry.
6. Further, Defendant's office has spent approximately ten (10) minutes to obtain an internet search and obtained Ms. Godsell's address and telephone number. A copy is attached hereto as Exhibit "C".
On November 1, 2004, Godsell filed an amended affidavit stating that her "contact *1212 person" in Florida was Robert Marchini, who "was a neighbor in Spring Hill on Applegate Drive until July or August of 2004" and who "mowed my lawn and kept an eye on my property while I was away." Godsell also alleged that a second neighbor, Frank Marino, could have been contacted regarding her "summer address."
On January 6, 2005, Godsell filed a "corrected" motion to vacate the final judgment. Her supporting affidavit stated that: (1) the property had been subject to a first mortgage for which Godsell had authorized automatic payments by a deduction from a Bank of America account; (2) that Godsell had continued to make the payments on her first mortgage during the foreclosure process; (3) that the Bank of America account had received transfers of funds from a Canadian account with Royal Bank of Canada ("the Canadian account"); (4) that the bank holding her Canadian account had her actual address and phone number in Canada; (5) that two employees of a Bank of America branch located in Spring Hill, Florida "knew her personally and that she was a Canadian resident" (6) that during 2004 the utilities on the Spring Hill residence had been paid by Godsell's granddaughter, Sarah Challis, who had moved to Tampa and would have been able to provide Godsell's Canadian address; and (7) that Bank of America was listed on the homeowner's policy as a named insured and from that policy United could have learned the name of Godsell's insurance agent, who had her Canadian address.
The court held a hearing on Godsell's motion on January 6, 2005, and ruled in favor of United, explaining:
I do think that due diligence, reasonable due diligence  obviously not perfect due diligence  but reasonable due diligence was exercised by the Plaintiff and their process server in trying to locate Mrs. Godsell, and that the Judgment at best is voidable, rather than void.
I don't think that there is any evidence that the service of process was so defective that it amounts to no notice of the proceedings. There is just simply, at best, a failure to strictly comply with the applicable service of process statutes, or the intent of the statutes, at least, which is to give actual notice to the person being served.
Since in this case, there is a bona fide purchaser for value, then  and the Judgment in my estimation is voidable and not void, it cannot be set aside against a bona fide purchaser for value. And so the effort to set aside the Final Judgment for the alleged defects in the service of process must fail.
A written order refusing to vacate the final judgment of foreclosure was later issued, which stated in relevant part:
Pursuant to Southeast and Associates, Inc. v. Fox Run Homeowners Association, Inc., 704 So.2d 694 (Fla. 4th DCA 1997), where a subsequent foreclosure is merely voidable, and not void, [the foreclosure and sale] cannot be set aside as against a bona fide purchaser.
Following the denial of her motion to vacate, Godsell filed a motion for rehearing, submitting a whole new series of affidavits, including one from Challis, Godsell's daughter, who averred that she was the former owner of the property at 8151 Allen Drive, which was the second property at which service had been attempted. She said that she once owned the property, but she had sold the property, and her mother had never resided there or received mail at that address.
Godsell's former neighbor, Robert Marchini, averred that he had lived next door to 6009 Applegate Drive until June 1, 2004 *1213 and had mowed Godsell's lawn; that he continued to mow her lawn after his move and first learned of the foreclosure in late September or early October 2004; that he had keys to the residence and during 2004 would move Godsell's mail into the residence after it "built up" in the mailbox; that he had her phone number in Canada, but had never been asked to provide it; that he had Challis' phone number and address in Gainesville, Florida; and that he had gone into Godsell's residence on many occasions in 2004, at which times it was always furnished, had electricity, and the pool pump had been on. In a separate affidavit, attorney David R. Carter averred that he had prepared a warranty deed for Godsell and he had her Canadian address in his file.
On February 23, 2005, the court issued an order denying Godsell's motion for rehearing, observing that Godsell had presented nothing new in her motion. The court reiterated its prior ruling that United had made a "diligent search and inquiry" to locate Godsell.
Florida courts have recognized that there must be strict compliance with the requirements of service of process by publication. Tindal v. Varner, 667 So.2d 890 (Fla. 2d DCA 1996). "Failure to strictly comply renders a subsequent judgment voidable." Floyd v. Federal Nat'l Mortgage Ass'n, 704 So.2d 1110, 1112 (Fla. 5th DCA 1998).
The statutes governing service by publication in Florida are contained in sections 49.021-.041, Florida Statutes. Service by publication may be used only when alternative service cannot be effected. See Helbig v. Schneider, 686 So.2d 742 (Fla. 2d DCA 1997).
Section 48.194, Florida Statutes, which is entitled "Personal service outside state," provides:
(1) Except as otherwise provided herein, service of process on persons outside of this state shall be made in the same manner as service within this state by any officer authorized to serve process in the state where the person is served. No order of court is required. An affidavit of the officer shall be filed, stating the time, manner, and place of service. The court may consider the affidavit, or any other competent evidence, in determining whether service has been properly made. Service of process on persons outside the United States may be required to conform to the provisions of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.
(2) Where in rem or quasi in rem relief is sought in a foreclosure proceeding as defined by s. 702.09, service of process on a person outside of this state where the address of the person to be served is known may be made by registered mail....
Id.
Godsell argues that service under section 48.194(2) could have been had, so that constructive service was not permitted because of the failure to make a diligent effort to obtain her Canadian address and serve her by mail there, or even to serve her by mail at her "known" address on Applegate Drive. Godsell does not dispute that her Canadian address was not actually "known" to United, but she asserts that it was so readily available as to be "known" if a minimally competent effort had been made. Alternatively, Godsell urges that the efforts made to locate her before serving her by publication were so defective as to amount to "no notice." The threshold issue thus appears to be whether United made a "diligent search and inquiry" to locate Godsell.
*1214 In arguing that no diligent search was made and that the service of process by publication was void, Godsell relies on Floyd v. Federal National Mortgage Association, supra, which was an appeal to this court from an order denying a motion to vacate a foreclosure sale. In finding that no diligent search had been made and the foreclosure had to be set aside, this court said:
In the instant case, FNMA's affidavit states that a search was made of the Social Security Administration database, Volusia County probate records and Vital Statistics without success. Notwithstanding, Social Security records did confirm that Pamela Johnson was deceased. FNMA, however, omitted the most meaningful search  getting out of the office, finding the property, inquiring of persons in possession of the property, or talking with neighbors, relatives or friends.
704 So.2d at 1112.
In Gans v. Heathgate-Sunflower Homeowners Ass'n, 593 So.2d 549 (Fla. 4th DCA 1992), a foreclosure action was brought by a homeowner's association against Gans after she purchased the property but failed to pay maintenance assessments. Personal service on Gans was attempted at the wrong address in Broward County, Florida. Once a new address in Miami was obtained from the Florida Department of Motor Vehicles, two attempts were made to serve her at the Miami address. The return recited that the process server had failed to find Gans "after diligent search and inquiry," but the back of the summons stated only "house appears vacant." 593 So.2d at 550. The homeowner's association filed an affidavit of "diligent search and inquiry" and gave Gans notice by publication, stating that her "mailing address and residence is unknown." The association then obtained a default judgment of foreclosure, which was never served on Gans, and the property was sold in a judicial sale. Gans learned of the sale when she received a call from the title company regarding a potential sale by the party who purchased in the foreclosure, and she filed suit to set aside the foreclosure. The court found the judgment to be void. In setting aside the foreclosure, the court held that constructive service was not available, stating in part:
[W]hen a plaintiff seeks service of process by publication, "an honest and conscientious effort, reasonably appropriate to the circumstances, must be made to acquire the information necessary to fully comply with the controlling statutes." Klinger, 136 Fla. at 68, 186 So. at 534. The process server made two attempts, but did not question Mrs. Gans's neighbors or take any other steps to locate her. He just concluded that the house, although furnished, was vacant. Also, the Association's counsel did not attempt to ascertain Mrs. Gans's whereabouts by contacting her neighbors, or by trying to contact her by phone or by mail. As a result, it seems to us unreasonable for the Association's counsel to have concluded that Mrs. Gans's residence was unknown and to have used that conclusion as a basis for the service of process by publication.... Although the statute does not require that the statement set forth the defendant's mailing address, we believe to conclude that Mrs. Gans's mailing address was unknown further shows that the Association did not make an honest and conscientious effort to notify her of the suit.
Id. at 551-552 (footnote omitted).
In Demars v. Village of Sandalwood Lakes Homeowners Ass'n, 625 So.2d 1219 (Fla. 4th DCA 1993), the Fourth District said that even though the affidavit *1215 may be facially sufficient, the facts underlying an affidavit of diligent search must show that a diligent search was made. 625 So.2d at 1224. The plaintiff must prove that it made "an honest and conscientious effort, reasonably appropriate to the circumstances, to acquire the information necessary to fully comply with the controlling statutes." Dor Cha, Inc. v. Hollingsworth, 876 So.2d 678, 680 (Fla. 4th DCA 2004). "It is basic that to constitute diligent search and inquiry to discover the whereabouts of a party, that inquiry should be made of persons likely or presumed to known such whereabouts." Id. at 680, quoting Mayo v. Mayo, 344 So.2d 933, 936 (Fla. 2d DCA 1977).
We have no trouble with this threshold question of whether the search for Mary Godsell met the minimum requirements of "diligent search and inquiry." It did not. Having been informed at the time of the first attempt at service that Godsell lived in Canada, the only investigation done was a "skip trace" of Florida's Department of Motor Vehicles, the Social Security data base and the United States Post Office for a forwarding address. So far as the record reflects, no effort was made to access any source calculated to discover Godsell's Canadian abode. See Kott v. Superior Court, 45 Cal.App.4th 1126, 53 Cal.Rptr.2d 215 (1996). This "search" did no more than turn up an address that was not Godsell's and then merely confirmed that she did not live there.
The determination that no diligent search was made brings us to the affidavit in support of the notice by publication. In Demars, the Fourth District said that an inadequate search would make the judgment voidable at the instance of the defendant landowner but that the judgment is not void so long as the affidavit alleges compliance with the requirements of section 49.041. Id. at 1224. This principle applies, as the Demars court explains, in order to support the marketability of land titles. In this case, the affidavit has a number of facial defects, such as whether the person is over or under eighteen, whether the address is unknown to the affiant, and it omits any reference to the important fact of defendant's Canadian residence. Additionally, by including an extraneous address, known not to be the address of the defendant, mailed notices that Godsell might have gotten were misdirected. Thus, although the "diligent search and inquiry" claim was contained in the affidavit, it was otherwise not in compliance with the statute. In that sense, this case is more like Gans than Demars. See Southeast and Assocs. v. Fox Run Homeowners Ass'n, 704 So.2d 694 (Fla. 4th DCA 1997). Service by publication in this case was void.
REVERSED and REMANDED.
PLEUS, C.J., and ORFINGER, J., concur.
GRIFFIN, J., concurs and concurs specially, with opinion, in which ORFINGER, J., concurs.
GRIFFIN, J., concurring specially.
Even if the judgment in this case were merely voidable, under Demars, we would remand for consideration of whether the purchaser at the foreclosure sale was a "bona fide" purchaser for value so as to keep the title acquired at the foreclosure sale. 625 So.2d at 1224. Godsell logically argues that if the judgment against her is voidable at her instance because she had no notice of the proceedings and the statutory requirement of diligent search and inquiry to locate her were not met, how could her rights in the property be completely divested simply because the successful purchaser in the judicial sale was not a party to the foreclosure suit? She *1216 suggests that such a deprivation would amount to a violation of due process. I confess that it does not seem either fair or logical that someone who participates in a judicial sale is insulated, based on a fiction of innocent ignorance, from defects in the judicial proceeding, especially one of this magnitude.[1]
As the Demars court explained, this protection of a BFP arose out of a 1938 decision of the Florida supreme court, Klinger v. Milton Holding Co., 136 Fla. 50, 186 So. 526 (1938). It may or may not matter that the Klinger case concerned the foreclosure of a tax certificate whereby Milton Holding obtained the property and then sold it to Mrs. Lummus, an innocent third party. The court in Klinger specifically referred to a rule in CORPUS JURIS that "a bona fide grantee from a purchaser at a judicial sale is not affected by irregularities, mistakes or fraud of which he did not have notice." Id. [Emphasis added.] CORPUS JURIS elsewhere appears to recognize, however, that, in general, the bona fide status of a grantee of a purchaser is stronger than that of the judicial sale purchaser himself because the purchaser, by definition, is aware that there are multiple reasons relating to the underlying litigation why the judgment may be set aside and why his purchase of the property may be divested. Compare § 65 and § 74(b) of 50A CORPUS JURIS SECUNDUM. Clearly, if the purchaser has some connection with the plaintiff or the litigation, he or she may lose BFP status, but, to me, anyone who successfully bids on a foreclosure property ought to take subject to the undoing of the judgment giving rise to the sale. Besides, a landowner in the position of Godsell cannot be completely without a remedy. If the sale of her property without compliance with the statute cannot be undone because the purchaser is a BFP, she must have a remedy in damages against the plaintiff whose negligence or misconduct caused her loss.
ORFINGER, J., concurs.
NOTES
[1] The property, which allegedly had a value in excess of $125,000, was apparently also subject to a first mortgage in the amount of approximately $24,000.
[1] The trial court suggested that there is an element of relative fault here and that Godsell is more at fault (or less faultless) because she did not make herself easy to find, but nothing in the record suggests that Godsell knew that she was not easy to find. Indeed, the record shows that she was easy to find.