990 So.2d 1135 (2008)
REDFIELD INVESTMENTS, A.V.V., a Netherlands Antilles corporation, Appellant,
v.
VILLAGE OF PINECREST, a Florida municipal corporation, Appellee.
No. 3D07-1766.
District Court of Appeal of Florida, Third District.
September 3, 2008.
*1136 Diaz, Reus & Targ, and Chad Purdie and Brant C. Hadaway, Miami; David Alschuler, for appellant.
Cynthia A. Everett, Opa Locka, for appellee.
Before SHEPHERD, CORTIÑAS, and LAGOA, JJ.
SHEPHERD, J.
In this interlocutory appeal, Redfield Investments, A.V.V., a Netherlands Antilles corporation (Redfield), challenges a trial court order denying its motion to quash service of process made upon it by publication. Redfield argues that the service is defective because the sworn statementa statutorily required condition precedent to setting in motion such servicesubmitted by the plaintiff, Village of Pinecrest, to the Clerk of Court, pursuant to the State's service by publication statute, is insufficient as a matter of law, and also that Pinecrest failed to complete its statutory obligation to conduct a diligent search to discover the whereabouts of Redfield or an *1137 agent upon whom service could be made. We agree with Redfield and reverse.[1]
This case arises out of an effort by the Village of Pinecrest to foreclose a lien for unpaid code enforcement fines on an unoccupied residence in the Village limits. Redfield is the record title holder of the property. The foreclosure case was filed on September 12, 2005. The next day, Pinecrest unsuccessfully sought to effectuate personal service on Redfield by serving former counsel, who it knew no longer represented Redfield. That effort having failed, Pinecrest sought to effectuate constructive service upon Redfield pursuant to Chapter 49 of the Florida Statutes, Florida's service by publication statute. Section 49.051, Florida Statutes (2006), contains explicit directions for service of process on a corporation. The statute states the plaintiff "shall show:"
(1) That diligent search and inquiry have been made to discover the true name, domicile, principal place of business, and status (that is, whether foreign, domestic, or dissolved) of the corporate defendant, and that the same is set forth in said sworn statement as particularly as is known to the affiant, and that diligent search and inquiry have also been made, to discover the names and whereabouts of all persons upon whom the service of process would bind the said corporation and that the same is specified as particularly as is known to the affiant; and
(2) Whether or not the corporation has ever qualified to do business in this state, unless shown to be a Florida corporation; and
(3) That all officers, directors, general managers, cashiers, resident agents, and business agents of the corporation, either:
(a) Are absent from the state; or
(b) Cannot be found within the state; or
(c) Conceal themselves so that process cannot be served upon them so as to bind the said corporation; or
(d) That their whereabouts are unknown to the affiant; or
(e) That said officers, directors, general managers, cashiers, resident agents, and business agents of the corporation are unknown to affiant.
§ 49.051 (emphasis added). The service by publication statute further states that upon filing the sworn statement and otherwise complying with the statutory requirements, "the clerk or judge . . . shall" issue a notice of action, which is then published in such newspapers as are permitted by law. § 49.08, Fla. Stat. (2006); see also §§ 49.09-.10, Fla. Stat. (2006).
In this case, Pinecrest proceeded through the Clerk of Court. In the required sworn statement, counsel for Pinecrest averred as follows:
2. The attorney for the Plaintiff has taken the following steps to locate an accurate, current address for the corporation:
a. The Defendant corporation's current principal place of business address, registered agent and corporate officers are unknown. Service of Process delivered to the address of record in the Miami-Dade County Property records was returned.
b. Directory assistance has no listing for Redfield Investments.
c. A Freedom of Information Inquiry, sent to the United States Post Office, has not yet revealed an accurate current or forwarding address for the Defendant.

*1138 d. Inquiry of the Miami-Dade County Tax Collector's Research Department has not yet revealed an accurate current or forwarding address for the Defendant.
e. Inquiry of the Miami-Dade Water and Sewer Department has not yet revealed a forwarding address for the Defendant.
f. Inquiry of the Miami-Dade County Recorders Office has not yet revealed an accurate current or forwarding address for the Defendant.
g. Inquiry of private utility, Florida Power & Light has not yet revealed an accurate current or forwarding address for the Defendant.
h. Inquiry of private telephone company, BELLSOUTH, has not yet revealed an accurate current or forwarding address for the Defendant.
i. Inquiry of former legal counsel for the Defendant, has not yet revealed an accurate current or forwarding address for the Defendant.
j. Inquiry of legal counsel who contacted the undersigned in December 2005 in reference to the instant matter and who stated that they had been contacted by the Defendant, did not reveal an accurate current or forwarding address for the Defendant.[[2]]
3. Affiant believes that there is no person in the State of Florida on whom service of process would bind the absent Defendant.
4. Affiant has not discovered any evidence showing that the corporation ever qualified to do business in the State of Florida.
5. All officers, directors, general managers, cashiers, resident agents, and business agents of the corporation are unknown to Affiant.
(emphasis added).
For the reasons that follow, we find the sworn statement legally insufficient and also conclude on the record presented that Pinecrest failed to conduct the diligent search required to meet statutory and constitutional notice and due process requirements.

DISCUSSION
Although personal service of process on a defendant is the usual and preferred method of serving a defendant with notice of an action, constructive service is permissible where allowed by statute. See §§ 49.011-.021, Fla. Stat. (2006). On the other hand, because the lack of personal service implicates due process concerns, a plaintiff must strictly comply with the statutory requirements. See Torres v. Arnco Constr., Inc., 867 So.2d 583, 586 (Fla. 5th DCA 2004); Carlini v. State, Dep't of Legal Affairs, 521 So.2d 254, 255 (Fla. 4th DCA 1988). Accordingly, where, as here, there is a challenge to constructive service, the trial court has the duty to determine not only whether the affidavit of search is legally sufficient, but also whether the plaintiff conducted an adequate search to locate the defendant. See Giron v. Ugly Mortgage, Inc., 935 So.2d 580, 582 (Fla. 3d DCA 2006); Se. & Assocs., Inc. v. Fox Run Homeowners Ass'n, 704 So.2d 694, 696 (Fla. 4th DCA 1997).
Although Pinecrest made some efforts to locate the defendant, Redfield, or an officer or agent, Redfield arguespersuasively in our viewthat the sworn *1139 statement submitted by Pinecrest is deafeningly silent concerning the most likely source of potential information regarding the "status" of the corporate defendant or "persons upon whom the service of process would bind the said corporation," see § 49.051(1), the local Venezuelan consulate, with whom Pinecrest had been in regular contact since almost the day Pinecrest learned of the code violations and sought to levy a fine on the property owner. The record presented to us unequivocally reflects that Pinecrest knew the Venezuelan government might have acquired an ownership interest in the property from Redfield through a Venezuelan equivalent of our Resolution Trust Corporation, or might have loaned money to Redfield on the strength of the residence as security.[3]
In response, Pinecrest argues to us that it "contacted all logical governmental authorities who might provide information or knowledge as to Redfield's whereabouts." This is patently untrue. Nor is it of any moment, as Pinecrest argued in the trial court, that "[Venezuela] . . . ha[d] not affirmatively asserted an interest in [the] matter[,]" or on its own initiative "failed to appropriately provide contact information." Pinecrest, however, has the burden to exercise reasonable diligence. As aptly stated by our sister court and pointed out by Pinecrest in its brief:
Reasonable diligence in such matters is an honest effort, and one appropriate to the circumstances, to ascertain whether actual notice may be given, and, if so, to give it. Such effort, however, need not embrace a search in remote parts of the state . . . and it is not essential that all possible or conceivable means should be used. But the effort should usually extend to inquiry of persons likely or presumed to know the facts sought.

Levenson v. McCarty, 877 So.2d 818, 820 (Fla. 4th DCA 2004) (quoting Smetal Corp. v. W. Lake Inv. Co., 126 Fla. 595, 604, 172 So. 58, 62 (1936)). While the case law has not drawn a bright line between efforts that show due diligence and those that are insufficient, we find that the apparent failure of Pinecrest to inquire of the most likely source of potential information concerning the whereabouts of Redfield, or an officer or agent, falls short of the statutory and constitutional requirements necessary to satisfy this state's service of process by publication law. See Levenson, 877 So.2d at 820.
Quite apart from this failure, we also note that the affidavit filed by Pinecrest in this case is itself legally insufficient. Not only does section 49.051 set forth explicit requirements to effectuate proper service of process by publication on a corporation in this state, but the statute also requires that the sworn statement show that the requirements have been met. Our case law is clear that averments in conclusory terms fall short of the statutory and constitutional requirements of the statute. See Coin Copies, Inc. v. Fin. Fed. Sav. & Loan Ass'n of Dade County, 439 So.2d 338, 338 (Fla. 3d DCA 1983); see *1140 also Perpro Sys. Int'l, Inc. v. Rickbeil, 668 So.2d 319, 320 (Fla. 4th DCA 1996) ("[T]he statement that `Affiant believes that there is no other person in the State of Florida upon whom service of process would bind the said Defendant' provides no basis to conclude that none of the alternative classes of persons designated for service of process can be found within this state or that they are concealing themselves."); Robinson v. Cornelius, 377 So.2d 776, 778 (Fla. 4th DCA 1979) (quoting Bird v. Int'l Graphics, Inc., 362 So.2d 316, 317 (Fla. 3d DCA 1978)) ("One seeking to effect substituted service of process has the burden of presenting facts which clearly justify the applicability of the statute."). Finally, we note that many of the averments in the sworn statement submitted in this case aver that a particular inquiry "has not yet revealed an accurate or current forwarding address for the Defendant." (emphasis added). Because constructive service by publication may not be utilized where personal service can be had, see § 49.021, the use of such qualifying terminology, at a minimum, leaves open to question whether these averments are sufficient to constitute strict compliance with the service by publication statute.
Reversed.
NOTES
[1] Redfield also seeks review of that portion of the order denying its motion to dismiss on the merits. We lack jurisdiction to review that portion of the order.
[2] On the date this sworn statement was filed by counsel for Pinecrest, she stated in a simultaneously filed Ex Parte Motion for Enlargement of Time to Effect Service of Process on Redfield, that while "contacted" by this legal counsel, "said counsel has not indicated that they have been retained to represent the Defendant in this action."
[3] The following entry taken from a "History Summary" prepared by the Village of Pinecrest's code enforcement officer and relied upon by both parties to this appeal illustrates why Pinecrest should have been on inquiry notice in this case:

9/30/04 Met with Mr. Fernandez of the Venezuelan Consulate. I delivered Special Master Order which he said he had it [sic] already. I told him if he would not mind signing my copy. He did. He told me that Redfield Partners gave this house as collateral for a loan they requested on a Venezuelan Bank. This would be like the FDIC in the U.S.A. He would inform the Bank to send money so violations can be corrected. I told him as soon as he knows that they have corrected the violations, to let me know so I can stop the fines. I gave him my business card. I had him sign a copy of the order for proof that I had met with him.