ROTHENBERG, J.
(dissenting).
Because the record clearly establishes that a diligent search for service of process was not conducted by Fifth Third Mortgage Company, the default and final judgment of foreclosure entered against Ms. Lewis must be vacated. Accordingly, I respectfully dissent.
*162 As the following record evidence was not provided in the majority opinion and it is essential to the legal analysis establishing why the judgment must be vacated, that evidence will be briefly addressed. Ms. Lewis, who purchased her home in 1996, faithfully and timely made all of her mortgage payments. In the summer of 2005, the property sustained considerable hurricane damage. After submitting a claim to her insurer, Ms. Lewis learned that her hurricane coverage had been eliminated by her insurer and her claim was denied. As a result, and with no notice to Ms. Lewis, the Fifth Third Mortgage Company forced placed insurance on the property.
In January 2007, when Ms. Lewis received her Escrow Account Statement from Fifth Third Bank,[8] showing a charge of $14,289, she immediately contacted the mortgage company and was informed about the forced placed insurance. Ms. Lewis communicated with the mortgage company via telephone, U.S. mail, and email on several occasions in an effort to pay the arrearages caused by the forced placed insurance. Based on the forced placed insurance, Ms. Lewis’ monthly mortgage payment of $883.50 increased to $4,360. After further communications, the mortgage company reduced her monthly payments to $2,667.63. Ms. Lewis, however, continued to dispute the amount and requested a breakdown of the charges.
In addition to communicating with the mortgage company, Ms. Lewis contacted the Florida Department of Financial Services on March 20, 2007, lodging her objections. She explained that after her insurer denied her property claim for damages sustained by Hurricane Wilma, the mortgage company purchased an insurance policy in the amount of $14,289 without notice to or consultation with her, covering fire, theft, and property damage but providing for no hurricane protection. She became aware of the mortgage company’s unilateral actions when she received an escrow statement from the mortgage company and discovered that her escrow account, which was used to pay her property taxes and insurance, and which always carried a balance, reflected a negative balance as a result of the forced placed insurance. Ms. Lewis explained that she had obtained an insurance policy, which included hurricane protection, for an annual premium of $4,360. The mortgage company, however, was insisting on a monthly payment of $4,337.64, due in large part to the insurance it had purchased, and the mortgage company was refusing to accept payments unless they were in that amount. On April 5, 2007, the Florida Department of Financial Services notified Ms. Lewis that the mortgage company is an Ohio financial institution not within its jurisdiction, and thus, the Department had forwarded her communication to the Ohio Department of Commerce.
Shortly thereafter, Ms. Lewis received conflicting communications from the mortgage company. On April 2, 2007, she received a default letter from the mortgage company stating that she owed $8,602.45, however, two weeks later, she received a statement from the mortgage company stating that she owed only $2,667.63. Ms. Lewis continued to submit her mortgage payments to the mortgage company while attempting to resolve the problem.
On November 16, 2007, Ms. Lewis received a letter from Florida Default Law Group, P.I. (“the law firm”), a law firm retained by the mortgage company to col *163 lect the debt by foreclosing the lien on the property. Ms. Lewis immediately responded and requested a breakdown of the moneys owed. She explained to the law firm that, while the mortgage company claimed she owed $22,901.96, she believed the amount owed was $15,199.35; she wanted a breakdown so she could pay the arrearages; and she wanted to resolve the situation as quickly as possible.
The law firm and Ms. Lewis continued to communicate through emails. On February 1, 2008, the law firm notified Ms. Lewis that it was “processing an updated reinstatement letter for [her].” On March 4, 2008, the mortgage company finally sent Ms. Lewis a letter indicating a reinstatement amount of $27,207, but without the breakdown Ms. Lewis had been requesting for months. Although the mortgage company and the law firm were in communication with Ms. Lewis throughout 2007 and from January 2008 through April 2008, neither the mortgage company nor the law firm told Ms. Lewis that they were attempting to serve her to foreclose on the property. The Verified Return of Service reflects that the law firm retained the process server on November 29, 2007, to serve Ms. Lewis. On December 22, 2007, when the process server attempted to serve Ms. Lewis at the property address, he was informed by the tenant residing there that Ms. Lewis was residing in the Bahamas. Despite being told by Ms. Lewis’ tenant that Ms. Lewis was residing in the Bahamas, the process server did not attempt to locate Ms. Lewis in the Bahamas and failed to disclose this information to the trial court in his Affidavit of Due and Diligent Search, dated March 24, 2008, stating instead that Ms. Lewis’ whereabouts were unknown.
Although the mortgage company had been communicating with Ms. Lewis by sending correspondence to her Miami post office box, by email, and directly by phone, the mortgage company never told Ms. Lewis they were foreclosing on the property. Further, when the process server was unable to serve Ms. Lewis at the property address and learned that she resided in the Bahamas, the mortgage company did not simply ask Ms. Lewis during their many communications for her Bahamian address. Instead, the mortgage company remained silent; failed to disclose to the trial court that it believed that Ms. Lewis lived in the Bahamas, or that it had her phone number, post office box address and email and had been in constant communication with her; and submitted an Affidavit of Due and Diligent Search, stating that the mortgage company was unable to serve Ms. Lewis because her whereabouts were unknown.
Statutes governing service of process are to be strictly construed to assure that defendants are notified of the proceedings and have the opportunity to protect their rights. Shurman v. Atl. Mortgage & Inv. Corp., 795 So.2d 952, 958-54 (Fla.2001); Shepheard v. Deutsche Bank Trust Co. Ams., 922 So.2d 340, 343 (Fla. 5th DCA 2006); see also Redfield Invs. A.V.V. v. Vill. of Pinecrest, 990 So.2d 1135, 1138 (Fla. 3d DCA 2008) (holding that because lack of personal service implicates due process concerns, the plaintiff must strictly comply with the statutory requirements); Floyd v. Fed. Nat’l Mortgage Ass’n, 704 So.2d 1110, 1112 (Fla. 5th DCA 1998) (holding that constructive service statutes require strict compliance). Additionally, “[t]he failure to strictly adhere to the statutes’ requirements deprives the court of jurisdiction over the defendant improperly served.” Shepheard, 922 So.2d at 343 (emphasis added).
Although service of process by publication in a foreclosure action is permitted, see § 49.011, Fla. Stat. (2007), a mortgage *164 holder may only resort to service of process by publication “[w]here personal service of process or ... service of process under s. 48.194 cannot be had.” § 49.021, Fla. Stat. (2007) (emphasis added); see Taylor v. Lopez, 358 So.2d 69, 70 (Fla. 3d DCA 1978) (holding that section 49.021 only authorizes service by publication when the plaintiff cannot effect personal service on a defendant).
Additionally, although a mortgage holder submits an affidavit of diligent search, this does not end the inquiry. Shepheard, 922 So.2d at 343. The trial court must still determine whether the mortgage holder actually conducted a diligent search. Redfield, 990 So.2d at 1138; Giron v. Ugly Mortgage, Inc., 935 So.2d 580, 582 (Fla. 3d DCA 2006); Demars v. Vill. of Sandalwood Lakes Homeowners Ass’n, 625 So.2d 1219, 1224 (Fla. 4th DCA 1993). “[W]hen a plaintiff seeks service of process by publication, ‘an honest and conscientious effort, reasonably appropriate to the circumstances, must be made to acquire the information necessary to fully comply with the controlling statutes.’ ” Gans v. Heathgate-Sunflower Homeowners Ass’n, 593 So.2d 549, 551-52 (Fla. 4th DCA 1992) (quoting Klinger v. Milton Holding Co., 136 Fla. 50, 186 So. 526, 534 (1938)).
The test to determine whether the plaintiff conducted a diligent search is “whether the complainant reasonably employed the knowledge at his command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstance to acquire the information necessary to enable him to effect personal service on the defendant.” Canzoniero v. Canzoniero, 305 So.2d 801, 803 (Fla. 4th DCA 1975). Although this Court in Redfield noted that the case law has not drawn a bright line between efforts that demonstrate due diligence and those that do not, this Court concluded that the failure to inquire of the most likely source to obtain information as to the whereabouts of the defendant “falls short of the statutory and constitutional requirements necessary to satisfy this state’s service of process by publication law.” Id. at 1139.
It is clear from the record evidence that the mortgage company failed to “reasonably employ! ] the knowledge at [its] command, [make a] diligent inquiry, and exert!] an honest and conscientious effort appropriate to the circumstance to acquire ... personal service on” Ms. Lewis. Canzoniero, 305 So.2d at 803. The mortgage company was in possession of Ms. Lewis’ Miami post office box number, telephone number, and email address. The process server was told that Ms. Lewis was living in the Bahamas. Despite being in possession of this information, and despite the fact that the mortgage company had been in constant communication with Ms. Lewis during the entire time it was attempting to notify her of the foreclosure proceedings, the mortgage company inexplicably failed to inform her of the foreclosure proceedings, ask her for her current address, or attempt to obtain her Bahamian address through any other means. Thus, while the Affidavit of Diligent Search was facially sufficient because it alleged that a diligent search was made, the instant record demonstrates that the mortgage company did not conduct a diligent search. Therefore, the trial court reversibly erred by denying Ms. Lewis’ motion to vacate the default and the final summary judgment of foreclosure. See Shepheard, 922 So.2d at 345 (finding that the default judgment entered against Ms. Shepheard was void due to defective service of process where the mortgage holder failed to follow leads likely to reveal her residence).
By simply asking Ms. Lewis to provide her current address, the mortgage compa *165 ny potentially could have properly served her in the Bahamas either by personal service of process or by substitute service of process through registered mail, in strict compliance with section 48.194, Florida Statutes (2007). If upon inquiry, Ms. Lewis refused to provide her current address, the mortgage company could have attempted to locate her Bahamian address by other means. The mortgage company, however, falsely claimed that it had conducted a diligent search, Ms. Lewis’ whereabouts were unknown, and it had no recourse but to serve her by publication.
A judgment against a defendant based upon improper service by publication lacks authority of law. Shepheard, 922 So.2d at 345; Batchin v. Barnett Bank of Sw. Fla., 647 So.2d 211, 213 (Fla. 2d DCA 1994). “Such improper service renders the judgment either void or voidable.” Shepheard, 922 So.2d at 345; see also Decker v. Kaplus, 763 So.2d 1229, 1230 (Fla. 5th DCA 2000); Reina v. Barnett Bank, N.A., 766 So.2d 290, 291 (Fla. 4th DCA 2000). If the service is irregular or defective but the defendant actually receives notice of the proceedings, the judgment is voidable. Shepheard, 922 So.2d at 345; Decker, 763 So.2d at 1230. However, where the service of process is so defective that it amounts to no notice of the proceedings, it is void. Reina, 766 So.2d at 292. A void judgment is a nullity. M.L. Builders, Inc. v. Reserve Developers, LLP, 769 So.2d 1079, 1082 (Fla. 4th DCA 2000) (citing Ramagli Realty Co. v. Craver, 121 So.2d 648, 654 (Fla.1960)).
I would find, as the Fourth District found in Gans and the Fifth District found in Shepheard, that the record establishes that the mortgage company’s service by publication was void. Where service by publication is void, reversal of the order of sale will defeat the title of the non-party who purchased the property in good faith at the judicial sale. Gans, 593 So.2d at 553; Citibank, N.A. v. Data Lease Fin. Corp., 645 F.2d 333, 336 (5th Cir.1981) (citing Garvin v. Watkins, 29 Fla. 151, 10 So. 818 (1892)).
In summary, the mortgage company failed to conduct a diligent search in strict compliance with the Florida statutes governing service of process. Because the mortgage company has the burden of proof when invoking jurisdiction of the court and it failed to establish that Ms. Lewis had notice of the legal proceedings against her, the judgment against her is void and must be vacated.

. Fifth Third Bank is the servicing agent of Fifth Third Mortgage Company. Thus, for simplicity, Fifth Third Mortgage Company and Fifth Third Bank will be collectively referred to as “mortgage company.”